# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JOAN ROSS WILDASIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil No. 3:14-cv-2036 |
| v. | ) Judge Sharp |
| | ) |
| PEGGY MATHES; | ) |
| HILAND, MATHES & | ) |
| URQUHART; AND BILL | ) |
| COLSON AUCTION & | ) |
| REALTY COMPANY | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM**

This is a dispute over the auction sale of a house in Pegram, Tennessee. Plaintiff sued the Administrator C.T.A. (Peggy D. Mathes), the auction company that she hired (Bill Colson Auction & Realty), and the Administrator's law firm (Hiland, Mathes & Urqhart, or "HUM"). HUM has moved for summary judgment on all of Plaintiff's claims.

Though this case arose from a property sale, this motion involves a narrower question of law: whether, under Tennessee law, an unincorporated association may be held vicariously liable when one of its members commits a tort. HUM argues that such a group may not be vicariously liable; Plaintiff argues that it may be held liable. Tennessee courts have not confronted the question, and the Court will not provide the answer today. Instead, it is enough to conclude that HUM has not shown why, given the undisputed facts, it is entitled to judgment as a matter of law. Accordingly, HUM's Motion will be denied.

1

# BACKGROUND[1]

Edward Hiland, Mike Urqhart, and Mathes are attorneys practicing law in Nashville, Tennessee. (Docket No. 68, p. 1.) Several years ago, they formed a limited-liability company designed to help share business expenses. (Docket No. 68, p. 2.) The three attorneys work together in a Nashville office space, where they split the cost of rent. They each own an equal share in the items in the office, which include a conference table, chairs, a fax and copy machine, and office furniture. (Docket No. 68, p. 2.) A single receptionist works at the office space and answers phone calls for all three attorneys. (Docket No. 68, p. 2.)

Despite some appearance otherwise, Hiland, Urqhart, and Mathes maintain that they are not a law firm, but "an association of attorneys." (Docket No. 47, p. 1.) The attorneys all share a letterhead—bearing the phrase "Hiland, Urqhart, and Mathes: an Association of Attorneys"—and have sometimes "inadverten[tly]" included the name of the association on state-court pleadings. (Docket No. 68, pp. 2, 5.) But they point out that they have no shared bank account, nor do they file shared tax returns for business expenses. (Docket No. 68, pp. 3–4.)

In 2010, Mathes was appointed administrator of Plaintiff's mother's estate. (Docket No. 30, p. 2.) The estate included a parcel of real property in Pegram, Tennessee, consisting of a single detached home that sits on a seven-acre lot. (Docket No. 30, p. 3.) The home was built in 2006 for about $450,000. (Docket No. 30, p. 3.) In September 2014, Mathes entered into an Exclusive Auction Listing Contract with Bill Colson Auction and Realty Company to sell the property. (Docket No. 30, p. 3.)

According to Plaintiff, Mathes misrepresented the property in advertisements, indicating that the house was 2,500 square feet instead of 3,553 square feet. (Docket No. 30, pp. 3–4.) Plaintiff also alleges that Mathes did not show up at the auction sale in October 2014. (Docket

---

[1] Unless the Court indicates otherwise, these facts are undisputed.

No. 30, p. 4.) The house was ultimately sold for $315,000—about $135,000 less than its value in 2006. (Docket No. 30, p. 5.)

Plaintiff blames Mathes for the low purchase price. She alleges that "potential bidders who were interested in a home having 3,553 square feet of living area, and who would have paid substantially more than $315,000 for such a home situated on 7.16 wooded acres of land, likely chose not to attend the auction." (Docket No. 30, p. 6.) Those who did attend the sale, she claims, were probably confused as to the true size of the home and the surrounding land. Docket No. 30, p. 6.)

Plaintiff filed her complaint in October 2014, shortly after the auction sale. (See Docket No. 1.) She alleges that Mathes was negligent as administrator of the estate (Count I) and as legal counsel (Count II). (Docket No. 30, pp. 6–8.) In Count II, Plaintiff alleges that HUM is vicariously liable for Mathes's negligent failure to provide legal services. (Docket No. 30, pp. 8–9.) HUM filed a Motion for Summary Judgment against Plaintiff on August 20, 2015. (Docket No. 46.) HUM argues that, as an unincorporated association, it cannot be held vicariously liable for the tortious conduct of one of its members. (Docket No. 47, p. 4.)

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Pennington v. State Farm Mut. Auto. Ins. Co., 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary-judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. Rodgers v. Banks, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the

nonmoving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. Id.

In deciding a motion for summary judgment, the Court must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. Van Gordner v. Grand Trunk W. R.R., Inc., 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. Id. A mere scintilla of evidence in support of the nonmoving party's position is not enough to survive summary judgment; instead, there must be evidence on which the jury could reasonably find for the nonmoving party. Rodgers, 344 F.3d at 595.

## ANALYSIS

HUM's argument rests mainly on its assertion that it is not a partnership. It repeatedly argues that an "association of three attorneys does not constitute a partnership as defined by Tennessee law." (Docket No. 47, p. 3.) It notes that the three attorneys have no written partnership agreement, no joint ownership or control of the association, no ability to bind the group to collective decisions, no joint bank accounts, and no shared tax returns. (Docket No. 47, p. 3.) In short, it argues, there is no evidence suggesting that the three attorneys ever held themselves out as partners or claimed to be a partnership. (Docket No. 47, p. 6.)

HUM has cited a few sources to support its assertion. It points to § 61-1-202 of the Tennessee Code, which provides that individuals who share profits are presumed to be partners. Tenn. Code. Ann. § 61-1-202(3). It also notes that the Sixth Circuit consistently finds that no partnership exists without profit sharing. Merritt v. Mountain Laurel Chalets, Inc., 2015 WL

4

1421165, at * 14 (E.D. Tenn. Mar. 27, 2015).  And it points out that the parties in a partnership must be bound by some contract, the existence of which must be proven by the party alleging the existence of a partnership.  See Story v. Lanier, 166 S.W.3d 167, 175 (Tenn. Ct. App. 2004) ("When a partnership agreement is not in writing, the party alleging the existence of a partnership carries the burden of proving that fact by clear and convincing evidence.")

HUM then observes, correctly, that "Tennessee law imposes liability on a partnership for the actionable conduct of a partner."  (Docket No. 47, p. 7.)  It points to § 61-1-305(a), which states that a partnership "is liable . . . as a result of a wrongful act or omission . . . of a partner" who acts in the scope of her employment or with the partnership's approval.  Tenn. Code Ann. § 61-1-305.  HUM notes that, if it were a partnership, it could be held vicariously liable for Mathes's shoddy legal representation.

So far, so good.  But after establishing that Tennessee law imposes vicarious liability on partnerships for a partner's tort, HUM flatly claims that "[b]ecause no partnership exists, [HUM is] not vicariously liable" for "any actionable conduct on behalf of Ms. Mathes." (Docket No. 47, p. 7.)  It cites no authority to support this conclusion.  Instead, perhaps for good measure, it states the point again: "Because [HUM] is not a partnership, . . . there is no legal basis to impose any liability [on HUM] for Ms. Mathes'[s] actions."  (Docket No. 47, p. 7.)

To sum up, HUM's brief argues that (1) HUM is not a partnership; (2) partnerships may be held vicariously liable for the torts of individual partners; therefore (3) HUM cannot be held vicariously liable for the tortious conduct of one of its members.

This logic is not exactly drum-tight.  HUM's conclusion hinges on its unspoken proposition that only a partnership—and no other business organization—may be held vicariously liable for a member's tortious conduct.  Unfortunately, HUM does not provide any

5

legal authority to support that proposition. The only cases cited in its memorandum simply lay out the standards for determining whether a partnership exists. (See Docket No. 47, pp. 4, 6–7.) And HUM mentions only two authorities after making its bold assertion of non-liability: Rule 8 of the Tennessee Rules of Supreme Court and a thirty-two-year-old ethics opinion published by the Tennessee Supreme Court. Neither authority is particularly useful for HUM's argument: the Supreme Court Rule states that its provisions are "not designed to be a basis for civil liability," while the ethics opinion merely explains that a group of attorneys may conduct business without forming a legal partnership. TENN. SUP. CT. R. 8, RPC PREAMBLE; BD. OF PROF'L RESPONSIBILITY OF THE SUP. CT. OF TENN., FORMAL ETHICS OPINION 84-F-64 (1984).

After a close look, Tennessee law seems unhelpful for HUM's case, too. Unincorporated associations are legal entities capable of being sued. See Tenn. Code. Ann. § 20-2-202(a)–(c) (setting out requirements for service upon unincorporated associations); TENN. R. CIV. P. 17.02(2) ("Any partnership or other unincorporated association may . . . be sued."). See also Fain v. O'Connell, 909 S.W.2d 790, 794 (Tenn. 1995) ("Unincorporated associations are consistently treated as legal entities which are subject to suit."). And an unincorporated association is not exempt from liability when a member violates a state statute or regulation. See Parker v. Warren Cty. Util. Dist., 2 S.W.3d 170, 177 (Tenn. 1999) (holding that employer could be held vicariously liable for employee's violation of state anti-discrimination law). See also Tenn. Code Ann. § 4-21-102(14) (state anti-discrimination law defining "person" as, among other things, an "unincorporated organization"). Moreover, many state-court cases show that an unincorporated association may be liable for the debts that its members assume. Blair v. S. Clay Mfg. Co., 121 S.W.2d 570, 572 (Tenn. 1938) ("If the association is organized for profit, the members are partners in legal effect and are liable for debts contracted in the name of the

association by other members."). Indeed, in such a situation, an unincorporated association is effectively a partnership for purposes of finding liability for breach of contract. See Boynton v. Headwaters, Inc., 252 F.R.D. 397, 400–01 (W.D. Tenn. 2008) ("[F]or the purposes of determining liability for the debts of [an unincorporated] association, members of a for-profit entity shall be treated as if they were partners.")

If vicarious liability can attach when a member of an unincorporated association violates a statute or breaches a contract, can it also attach when a member commits a tort? HUM argues that it cannot, but offers nothing to support that argument. Thus, even if the Court were to assume that HUM is not a partnership, HUM has not shown why it is entitled to judgment as a matter of law. This is not enough to prevail on summary judgment. FED. R. CIV. P. 56(c); See, e.g., Gallenstein Bros., Inc. v. Gen. Accident Ins. Co., 178 F. Supp. 2d 907, 914 (S.D. Ohio 2001) ("In a summary judgment proceeding, the moving party must show that it is entitled to judgment as a matter of law."). HUM's motion will be denied.

## CONCLUSION

For the foregoing reasons, the Court will deny Defendant's Motion for Summary Judgment. An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE