IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOAN ROSS WILDASIN,         )
                                       )
          Plaintiff,        )
                                       )
v.                            )     No. 3:14-2036
                                       )
PEGGY D. MATHES, et al.,      )
                                       )
          Defendants.    )

To:    The Honorable Waverly D. Crenshaw, Chief District Judge

## R E P O R T   A N D   R E C O M M E N D A T I O N

Pending before the Court are three post-trial motions: (1) Defendant Peggy Mathes' motion to dismiss for lack of subject matter jurisdiction (Docket Entry ("DE") 228); (2) Defendant Mathes' motion for judgment as a matter of law, or alternatively for a new trial (DE 238); and (3) Plaintiff Joan Wildasin's motion for attorney's fees, expenses, and prejudgment interest (DE 230). These motions have been referred to the undersigned, pursuant to 28 U.S.C. § 636(b), for a Report and Recommendation. *See* DE 256.

Upon review of the transcript of the underlying trial and consideration of the parties' filings, I recommend the following: that Defendant Mathes' motion to dismiss (DE 228) be **GRANTED**. If necessary, I additionally and alternatively recommend that Defendant Mathes' motion for judgment as a matter of law, or alternatively for a new trial (DE 238) be **DENIED**; and that Plaintiff Wildasin's motion for attorney's fees, expenses, and prejudgment interest (DE 230) be **DENIED**.

# I. BACKGROUND

## A. Relevant Factual Background.[1]

The instant lawsuit involves a dispute regarding the auction of a home belonging to the estate of Jane Kathryn Ross (hereinafter referred to as "the Estate"), mother of Plaintiff, who died in 2010. Following Ms. Ross' death, Defendant Mathes, an attorney, was appointed Administrator C.T.A. of the estate by a Tennessee state probate court.[2] As part of this appointment, Defendant procured a professional appraisal of the home in 2011 which indicated that the home consisted of 3,553 square feet of finished, above-grade interior space, with an estimated value of $480,000.[3]

In a separate lawsuit filed in state probate court, the Estate obtained a judgment against Ms. Ross' son, Paul Sorace, for unjust enrichment in the amount of $417,000.[4] Mr. Sorace failed to pay the judgment, however, which ultimately led to the Estate purchasing the house at a sheriff's auction for $325,000.[5] Plaintiff, acting on behalf of the Estate, then moved to sell the house at a public auction, at which point Defendant hired Bill Colson Auction & Realty ("Auction Company") to facilitate the sale. Employee

---

[1] Unless otherwise noted, this undisputed factual background is derived from the former presiding District Judge's memorandum of law addressing Defendants' previous motions for summary judgment. *See* DE 89.

[2] For purposes of this Report and Recommendation, "Defendant" refers to Defendant Mathes.

[3] This appraisal was performed by Richard Exton. DE 253 at 7.

[4] The Court omits a detailed discussion of this lawsuit, as it is not germane to the undersigned's analysis of the pending motions.

[5] Eugene Bulso, attorney for Plaintiff in the instant matter, was representing both Plaintiff and Defendant Mathes, in her capacity as Administrator C.T.A., in the lawsuit against Mr. Sorace. Mr. Bulso reportedly purchased the property without the knowledge or consent of Defendant Mathes. DE 14 at 2.

Bobby Colson ("Colson"), a licensed auctioneer and real estate broker with 35 years of experience, was designated to serve as the auctioneer responsible for the sale.

Colson began by researching the property at issue. He utilized a subscription service called RealTracs.net ("RealTracs"), which retrieves information about land parcels from public records. Unfortunately, the report that Colson procured from RealTracs on September 8, 2014 mistakenly indicated that the house consisted of only 2,538 square feet. In reality, the house included approximately 3,553 square feet of "living area above grade" and 2,599 square feet of "living area below grade," all of which was information that Plaintiff had provided to Defendant in 2012.[6] However, Colson did not rely on any other records in preparing for the auction, and thus proceeded to post several advertisements for the property that inaccurately identified the house as consisting of 2,500 square feet, approximately 1,000 square feet less than its true dimensions. Defendant later stated that she was not aware of these postings, nor does she usually "do anything" to ensure that advertisements for property of this sort contain accurate information. Defendant also admitted that she did not relay the 2011 appraisal or the information contained therein to Colson at any time.

The auction sale was scheduled for October 18, 2014 at 10:30 a.m. Colson opened the house to the public approximately one hour before the auction as part of this process, during which time Eugene Bulso, counsel for Plaintiff, approached Colson and advised him that his posted advertisements contained an inaccurate description of the house. Mr. Bulso provided Colson with the 2011 appraisal report, which showed the house's size as

---

[6] The Davidson County Tax Assessor's Office identified the home as having 3,573 square feet of space that was centrally cooled and heated, as well as 2,538 square feet of "Finished Area." These slight differences in measurement and nomenclature are immaterial to the undersigned's analysis.

3,553 square feet. In response, Colson advised Defendant of the exchange with Bulso, then made an announcement to all potential bidders that the advertisements were inaccurate and that the property in question actually consisted of "probably 3,500 square feet [], more or less." Colson also informed the bidders that a 2011 appraisal and a previous property tax assessment had valued the home at $480,000 and $400,000, respectively. The auction began shortly thereafter and concluded with a winning bid of $315,000 from Rhonda Smart.

Defendant moved to approve the auction contract in probate court the following week, which led to a hearing on November 7, 2014 before Judge David R. Kennedy of the Davidson County Circuit Court. Neither Defendant, as Administrator C.T.A., nor Bulso, as counsel for Plaintiff, objected to judicial approval of the contract. The trustee for the bankruptcy estate of Mr. Sorace, who was also present at the hearing, asserted that despite the inaccurate advertisements, the auction sale was ripe for judicial approval. The trustee also noted that the winning bid of $315,000 was just $10,000 less than what Plaintiff had paid for the property just months earlier at the sheriff's auction, and cited a previous motion in which Mr. Bulso argued that the $325,000 sheriff's auction price "is conclusively presumed to be the value of the property." The trustee therefore asked the probate court to acknowledge that $315,000 was the current fair market value of the home, which Judge Kennedy denied. Nevertheless, Judge Kennedy approved the auction sale price, describing the $315,000 amount as a "fair and reasonable price based upon all of the circumstances" and a "commercially reasonable price."

## B. Relevant Procedural History.

Plaintiff filed the instant suit in October of 2014 against Defendant Mathes, Hiland, Mathes & Urquhart ("HUM"),[7] and the Auction Company. Her first amended complaint contains three counts: (1) that Defendant Mathes committed negligence as Administrator C.T.A.; (2) that Defendant Mathes committed negligence as legal counsel;[8] and (3) that the Auction Company committed negligence and negligence per se. DE 30 at ¶¶ 36-54. Following motions for summary judgment filed by Defendant Mathes and the Auction Company (DE 43, 51), former District Judge Kevin H. Sharp granted summary judgment in favor of Mathes only with respect to the negligence-as-legal-counsel claim, thus leaving the negligence-as-administrator claim intact. *See* DE 89, 90. Defendant Mathes later filed a motion to reconsider this ruling (DE 111) and another motion for summary judgment (DE 151), both of which were denied by District Judge Curtis L. Collier. *See* DE 194, 195.[9] The parties later stipulated to the dismissal of all claims against the Auction Company (DE 217), thus leaving only Plaintiff's claim against Defendant Mathes for negligence as Administrator C.T.A.

The ensuing trial took place on August 15 and 16, 2017, and resulted in a verdict for Plaintiff. DE 224. The jury determined that Plaintiff suffered damages in the amount of $114,167, which appears to have been based on the difference between a second appraisal that Mr. Exton performed in 2015, which valued the property at $430,000, and

---

[7] HUM identifies itself as an "association of attorneys" in which the attorneys "are associated only for the purpose of sharing expenses." DE 32 at ¶ 3.

[8] This count included a claim that HUM was vicariously liable for Defendant Mathes' negligence (DE 30 at ¶ 45), which was later dismissed by the District Judge. *See* DE 109, 110.

[9] This case was reassigned to Judge Collier on February 28, 2017. *See* DE 174.

the $315,000 amount received at the auction sale. *Id.*[10] Before the jury returned its verdict, however, Defendant moved the court for judgment as a matter of law, which she based on Plaintiff's alleged failure to demonstrate causation or a breach of duty on the part of Defendant Mathes. *See* Transcript of the Trial Proceedings, DE 254 at 47-52.[11] Judge Collier denied the motion (*id.* at 56), at which point the trial continued.

Defendant then filed the pending post-trial motion to dismiss (DE 228) and renewed motion for judgment as a matter of law (DE 238), yet filed supporting briefs that contained no citations to the trial record. *See* DE 229, 239. This prompted Chief District Judge Waverly D. Crenshaw, the current District Judge,[12] to enter an order requiring Defendant to obtain and electronically file a copy of the trial transcript, and to submit new briefs in support of her motions with citations to the trial record within 21 days of filing the transcript. DE 249 at 2. Defendant responded by filing a single brief in support of both motions on June 14, 2018. DE 255.[13] Plaintiff filed a response to this brief 27

---

[10] It is unclear why the jury awarded $833 less than the difference between this second appraisal and the auction sale price, which comes to $115,000. The undersigned must necessarily assume that the second appraisal was used in formulating this number, as I am unable to locate any other figure in the record on which the jury might have derived its verdict. The matter is discussed in greater detail elsewhere in this Report and Recommendation.

[11] The Transcript of the Trial Proceedings is contained in three volumes (DE 252-54) and, consistent with the abbreviations used elsewhere in this opinion, will be referenced by the document number and corresponding page number(s) as denoted by the large blue print on the bottom of each page (*e.g.* DE 254 at 52).

[12] This case was reassigned to Judge Crenshaw on April 10, 2018. *See* DE 247.

[13] The Court notes this filing date because it is exactly 22 days after the transcript was filed (*see* DE 252-54), thus rendering Defendant's submission untimely. This failure to adhere to Judge Crenshaw's order is particularly vexing given that the deadline was only imposed because Defendant initially failed to file a brief with any citations to the trial record. The undersigned will overlook such dilatoriness for purposes of this Report and Recommendation, but counsel would be wise to remember that Court orders are not optional recommendations.

6

days later.[14] The Court will address the merits of Defendants' arguments, as well as Plaintiff's motion for attorney's fees, in turn.

## II. ANALYSIS

### A. Motion to Dismiss.

Defendant argues that the Court lacks subject matter jurisdiction in the instant case based on the lack of complete diversity between the parties. She cites Fed. R. Civ. 17(a), which states that a cause of action "must be prosecuted in the name of the real party in interest," to support her claim that Plaintiff has "impermissibly manufactured diversity" to establish subject matter jurisdiction since the Estate has not been named a party to the lawsuit. DE 255 at 11. This is significant, according to Defendant, because the amended complaint alleges that Plaintiff may assert claims "derivatively on behalf of the Estate" of her mother, Ms. Ross. DE 30 at ¶ 52.

The Court notes initially that Defendant's argument for dismissal based on Fed. R. Civ. 17(a) appears to be subject to waiver. *See Herzig v. Oncology/Hematology Care, Inc.*, No. CIV.A.3:97CV-795-S, 2001 WL 1775378, at *2 (W.D. Ky. May 24, 2001) (noting that although the Federal Rules of Civil Procedure do not contain a specific limitation period for raising a Rule 17(a) objection, "it is well established that such an objection must be made with reasonable promptness.") (citing *Chicago & Northwestern Transp. Co. v. Negus-Sweenie, Inc.*, 549 F.2d 47, 50 (8th Cir. 1977)). Although the federal rules do not provide a specific procedure or time frame for raising this objection,

---

[14] It appears that neither party possesses the wherewithal to comply with Court orders, as Plaintiff has similarly violated Judge Crenshaw's instruction by failing to file a responsive brief within 21 days of Defendant's resubmission. DE 249 at 2. The undersigned will reluctantly excuse this carelessness, but directs counsel for both parties to Henry David Thoreau's sage wisdom: "It takes two to speak the truth: one to speak, and another to hear."

Case 3:14-cv-02036   Document 260   Filed 09/21/18   Page 7 of 43 PageID #: 3314

*Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 614 (W.D. Tenn. 2011), the real-party-in-interest requirement is an affirmative defense that is generally forfeited if raised at a late stage of litigation. *Cranpark, Inc. v. Rogers Grp., Inc.*, 821 F.3d 723, 730 (6th Cir. 2016). *See also Gogolin & Stelter v. Karn's Auto Imports, Inc.,* 886 F.2d 100, 102-03 (5th Cir. 1989) (affirmative defense waived when made at the close of plaintiff's evidence). Defendant cannot reasonably contend that raising this defense for the first time in a post-trial motion, nearly three years after the commencement of the suit, represents prompt action.

Additionally, while it is true that 28 U.S.C. § 1332(c)(2) states that "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent," and that the Estate is a Tennessee citizen for purposes of diversity jurisdiction, Plaintiff's negligence claim involves an alleged breach of duty of care to Plaintiff *as a beneficiary* (DE 30 at ¶¶ 37, 41), and not as a representative of the Estate. Defendant points to no statute or relevant case law suggesting that this particular claim binds Plaintiff to the citizenship of her mother under 28 U.S.C. § 1332(c)(2). *See Bryant v. Turney*, No. 5:11-CV-00128-TBR, 2012 WL 4471589, at *4 (W.D. Ky. Sept. 26, 2012) (holding that because plaintiff brought suit as a beneficiary of the estate of the decedent, plaintiff "is not cloaked with [the decedent's] citizenship by 28 U.S.C. § 1332(c)(2)").

Nevertheless, it is well-established that if a court determines at any time that it lacks subject matter jurisdiction to preside over a cause of action, the action must be dismissed. *See Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) ("[T]he existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself.") (citing *In re Lewis,* 398 F.3d 735, 739 (6th Cir.

2005)). The undersigned notes with concern that Defendant failed to raise the issue of subject matter jurisdiction at any point during the course of litigation; indeed, the final pretrial order indicates that jurisdiction was not in dispute. *See* DE 218 at 1. Defendant therefore elected to acquiesce to this Court's jurisdiction, engage in several years of litigation, and participate in a multi-day trial before asserting any jurisdictional challenge. The Court's adherence to the Federal Rules of Civil Procedure and relevant circuit precedent is the only thing preventing Defendant's argument from being dismissed as a monumentally tardy request.

Therefore, because the Court has "an independent duty to inquire ... whenever a doubt arises as to the existence of federal jurisdiction," *Kentucky Press Ass'n, Inc. v. Kentucky*, 454 F.3d 505, 508 (6th Cir. 2006) (quoting *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 278 (1977)), the grounds for subject matter jurisdiction must be examined. *See Kontrick v. Ryan*, 540 U.S. 443, 459 (2004) ("[L]ack of subject-matter jurisdiction is preserved post-trial."). Unfortunately, the undersigned concludes that the so-called "probate exception" prevents this Court from assuming subject matter jurisdiction in this matter.[15] The parameters of this doctrine, which have been a source of consternation for many courts over the years, have been described by the Supreme Court in the following way:

> [T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in

---

[15] Although Defendant has not relied on the probate exception in support of her motion, I follow the lead of numerous federal district courts which have found it necessary to address the doctrine *sua sponte* in light of its impact on subject matter jurisdiction. *See, e.g., Oliver v. Hines*, 943 F. Supp. 2d 634 (E.D. Va. 2013); *Vangrack, Axelson & Williamowsky, P.C. v. Estate of Abbasi*, 261 F. Supp. 2d 352 (D. Md. 2003); *Estate of Genecin ex rel. Genecin v. Genecin*, 363 F. Supp. 2d 306 (D. Conn. 2005).

> the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction.

*Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006). Stated differently, a federal district court may not probate a will or administer an estate, *Markham v. Allen*, 326 U.S. 490, 494 (1946), but it may preside over actions in which a plaintiff seeks an *in personam* judgment against a defendant that does not reach a *res* in the custody of a state court. *Marshall*, 547 U.S. at 312.[16] The Sixth Circuit has described the probate exception as "a practical doctrine designed to promote legal certainty and judicial economy by providing a single forum of litigation, and to tap the expertise of probate judges by conferring exclusive jurisdiction on the probate court." *Lepard v. NBD Bank, a Div. of Bank One*, 384 F.3d 232, 237 (6th Cir. 2004) (internal citation omitted).

The Sixth Circuit has also delineated the types of situations in which the probate exception applies. For example, a plaintiff may not seek an order enjoining a defendant's distribution of assets received from an estate, an order divesting a defendant of all property he or she has retained from the estate, or a declaration that a probated will be declared invalid. *Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007). The probate exception also prevents a plaintiff from seeking "money damages equal to the amount of the probate disbursements." *Id*. n.1. A plaintiff is not, however, barred from challenging *inter vivos* transfers of property or from seeking disgorgement of monies that were improperly removed from the decedent's estate during his or her lifetime. *Id*. at 751. Of particular significance to the instant matter, the Sixth Circuit has also indicated that

---

[16] An action *in rem* is "[a]n action determining the title to property and the rights of the parties ... a real action." *Black's Law Dictionary* (10th ed. 2014). An action *in personam* is "[a]n action brought against a person rather than property." *Id.*

Case 3:14-cv-02036   Document 260   Filed 09/21/18   Page 10 of 43 PageID #: 3317

causes of action alleging breach of fiduciary duties "do not necessarily fall within the scope of the probate exception." *Id*.

Notably, the aforementioned *Marshall* opinion attempted to narrow the scope of the probate exception. 547 U.S. at 299-300. There are, however, very few cases involving the *Marshall* court's application of the probate exception in the context of a tortious claim against the administrator of a Tennessee estate. Indeed, the undersigned is aware of only one relevant case that discusses *Marshall*'s interpretation of the probate exception with respect to Tennessee law, *Bank of Beaver City v. Branham*, in which the district court determined that a plaintiff's claim against the administrator of an estate improperly requested that the federal court "interfere with the administration of the [] estate and direct the sale of the property in the estate for the benefit of the plaintiff over other creditors, matters which are presently pending before the [probate court]." No. 3:03-cv-575, 2006 WL 1469300, at *8 (E.D. Tenn. May 24, 2006). In granting the subject defendant's motion for abstention based on the probate exception, the district court cited the defendant's assertion that "a determination of what property should be sold, *how it is sold*, and the priority of unsecured and secured lien creditors of the estate that are to receive the proceeds is a function of the state probate and administration of estates." *Id*. at *7 (emphasis added).

Application of the probate exception following *Marshall* has produced somewhat murky results. In *Wisecarver*, the Sixth Circuit held that the subject plaintiffs' claims against two defendants, one of whom also served as executrix of the decedent's estate, for breach of fiduciary duty, breach of confidential relationship, undue influence, and fraud were not barred by the probate exception "because they seek *in personam* jurisdiction

over the Defendants and do not seek to probate or annul a will." 489 F.3d at 750. The Sixth Circuit has cited the *Wisecarver* holding in just one other breach of fiduciary duty case, *Osborn v. Griffin*, in which it similarly determined that the probate exception did not apply to the plaintiffs' claim for breach of fiduciary against their defendant brothers. 865 F.3d 417, 433-36 (6th Cir. 2017).

However, decisions from district courts in this circuit following both *Marshall* and *Wisecarver* indicate that claims for breach of fiduciary duty can still fall within the purview of the probate exception. The Northern District of Ohio has held that it is without jurisdiction to preside over a breach of fiduciary claim against an estate administrator because it "interfere[s] with probate proceedings." *Copeland v. Stein*, No. 5:10-cv-2704, 2011 WL 304829, at *1 (N.D. Ohio Jan. 28, 2011). *See also Rodgers v. I.R.S.*, No. 5:10-cv-2469, 2011 WL 198023, at *1 (N.D. Ohio Jan. 19, 2011) (same). In other cases, the district court has referenced the Sixth Circuit's historical reticence to find that federal courts have jurisdiction for breach of fiduciary claims. *See Swartz v. DiCarlo*, No. 1:12-cv-3112, 2013 WL 3816734, at *6 (N.D. Ohio July 19, 2013) ("[T]he Sixth Circuit has held that matters involving an alleged breach of fiduciary duties or the mismanagement of an estate by an administrator belong almost exclusively to the probate courts."); *see also Wozniak v. Corrigan*, No. 1:05-cv-2259, 2006 WL 4512815, at *4 (N.D. Ohio May 12, 2006) (same). The district court for the Western District of Michigan has similarly held that a claim against a conservator for breach of fiduciary duty in connection with the administration of a probate estate "fall[s] within the exclusive jurisdiction of the probate court and outside of the federal court's jurisdiction." *LaMie v. Wright*, No. 1:12-cv-1299, 2014 WL 3341587, at *6 (W.D. Mich. July 8, 2014).

The undersigned references this apparent lack of harmony within the circuit to emphasize that the probate exception is not a general doctrine that can be employed rigidly. As the Sixth Circuit has noted, "the probate exception is not easily applied to particular cases." *Uzielli v. Frank*, 137 F. App'x 795, 799 n.1 (6th Cir. 2005) (quoting *Rice v. Rice Foundation,* 610 F.2d 471, 475 (7th Cir. 1979)). However, courts routinely hold that the probate exception does not apply if a cause of action avoids judicial encroachment on property that is within the control of a probate court. *See, e.g., Osborn*, 865 F.3d at 435 ("[P]roperty that a party *removes* from a decedent's estate prior to his death is not part of the *res* that is distributed by the probate court.") (emphasis in original); *Curtis v. Brunsting*, 704 F.3d 406, 410 (5th Cir. 2013) (holding that claim for breach of fiduciary duty against trustee related to an *inter vivos* trust was not barred by the probate exception since assets in an *inter vivos* trust are by definition outside of the custody of the probate court); *Jones v. Brennan*, 465 F.3d 304, 308 (7th Cir. 2006) (noting that claims for breach of fiduciary duty against guardians *ad litem* may fall outside of the probate exception if the guardians "step outside the scope of their agency and engage in self-dealing"); *Campi v. Chirco Tr. UDT 02-11-97*, 223 F. App'x 584, 585 (9th Cir. 2007) (probate exception not implicated in claim for breach of fiduciary duty related to assets removed from a trust and never probated).

Against this somewhat hazy precedential backdrop, the undersigned turns to the substance of the instant case, which involves a claim of negligence against an Administrator C.T.A. in her court-appointed role of administering a decedent's estate. The Court notes with emphasis that as part of the underlying probate case, Plaintiff did not oppose the approval of the auction contract, nor did she object to the probate judge's

finding that the auction sale price was a "fair and reasonable price based upon all of the circumstances." DE 73-7 at 13-15. She does not seek an accounting of assets acquired while Ms. Ross was still alive or a monetary judgment stemming from assets improperly removed by the executor during the decedent's lifetime, which were the only two claims exempted from the probate exception in *Wisecarver*. *See* 489 F.3d at 751.

Additionally, and crucially, Plaintiff does not allege that Defendant Mathes breached her fiduciary duty by acting outside of the scope of her role as administrator, which distinguishes her claim from others involving the same allegation. *See, e.g., Jones*, 465 F.3d at 305, 308 (holding that probate exception did not preclude all claims against court-appointed guardians because "conceivably some of the alleged misconduct involving the plaintiff's claim to a share of her father's estate occurred outside the proceedings to administer the estate"); *Kowalski v. Boliker*, 893 F.3d 987, 996 (7th Cir. 2018) (district court properly retained jurisdiction in case where plaintiff "complains only about outside actors who allegedly interfered" and not actions taken by court and its officers). To the contrary, the amended complaint specifically alleges that the damages at issue are "a direct and proximate result of Mathes' negligence in the performance of her duties as Administrator C.T.A. of the Estate of Jane Kathryn Ross[.]" DE 30 at ¶ 41. Although couched as an *in personam* action against Defendant, the amended complaint therefore asks the Court to review, and find fault with, the probate court's handling of the Estate by concluding that Ms. Mathes' administration of the property at issue was negligent. *See Lefkowitz v. Bank of New York*, 528 F.3d 102, 107 (2d Cir. 2007) (noting that several of the plaintiff's allegations "seek[] to mask in claims for federal relief her complaints about the maladministration of her parent's estates"). As a result, Plaintiff's

claim reaches the *res* over which the state probate court has custody, which falls directly within the scope of the probate exception. *See Struck v. Cook Cty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007) (claims that challenge the conduct and decisions of an administrator "are supervised by the court that appointed [her]" and an attempt to bring such claims in federal court is "the sort of maneuver that the probate [] exception is intended to prevent").

This finding is bolstered by the fact that Plaintiff has claimed, and was awarded, damages that actually belong to the Estate, to which she is only one of two beneficiaries. The amended complaint alleges that Defendant Mathes "sold the Estate's Property for $315,000, more than $150,000 less than its fair market value," before demanding damages "in an amount in excess of $150,000" based on harm caused to "Plaintiff *and the Estate.*" DE 30 at ¶¶ 48, 54 (emphasis added). The chief district judge for the Eastern District of Michigan has cogently explained why this situation, coupled with the fact that Defendant's alleged negligence occurred within the scope of her role as Administrator C.T.A., prevents the district court from assuming jurisdiction in the administration of a trust:[17]

> Any administrative issues against [the co-trustees] are supplemental issues regarding the administration of the Trusts. Should there be a finding against [the co-trustees], ... such "damages" may or may not come from the *res* of the Trusts. Such ... "damages" may also then be returned or paid to the *res* of the Trusts, as opposed to the individual beneficiaries. The *res* of the Trusts is clearly at issue, which means the "probate exception" applies in this matter. The beneficiaries of the Trusts do not allege that [the co-trustees], outside the role of Trustee of the Trusts, interfered

---

[17] Although Defendant Mathes is designated an "Administrator C.T.A.," her fiduciary obligations under Tennessee law are equivalent to those required of other trustees. *In re Cuneo's Estate*, 63 Tenn. App. 507, 515, 475 S.W.2d 672, 676 (1971). The chief district judge's analysis with respect to a trust and its trustees therefore reasonably corresponds to the undersigned's analysis of an estate and its administrator.

> against the beneficiaries from receiving the *res* from the Trusts. The
> beneficiaries allege that the [co-trustees], in the role of the Trustee of the
> Trusts, ... have failed to properly administer the Trusts. The Court finds
> that any allegations and claims by the beneficiaries of the Trusts, ...
> against [the co-trustees], in the role of Trustee of the Trusts, cannot be
> properly before the federal courts since the federal court would necessarily
> invade the state probate court's authority to internally administer the
> Trusts.

*In re Gentry*, No. 09-36472, 2016 WL 4061248, at *9 (E.D. Mich. July 29, 2016).
Similarly, Plaintiff's claim has impermissibly asked this district court to nullify the
probate court's administration of the Estate, namely the probate judge's approval of the
contract resulting from a court-ordered auction which yielded a price that was both
"commercially reasonable" and "fair and reasonable ... based upon all of the
circumstances." DE 89 at 7. The *Gentry* decision also demonstrates the inescapable flaw
in Plaintiff's contention that she, as only one of *two* beneficiaries to the Estate, can be
entitled to damages that ostensibly belong to the Estate, and are thus subject to
distribution to both Plaintiff *and* Mr. Sorace. *See also Starr v. Rupp*, 421 F.2d 999, 1004
(6th Cir. 1970) ("[A]ny damages resulting from breach of the executor's duties … would
rightfully belong to the estate, and not to the plaintiffs who are only a few of the
beneficiaries under the will.").

Put another way, Plaintiff's decision to acquiesce to the probate court's approval
of the auction sale contract but nevertheless file a federal lawsuit alleging that the court-
approved auction price was too low constitutes an attempt to both have her cake and eat it
too. Mr. Bulso's appearance at the contract approval hearing best illustrates this point,
during which counsel refused to object to the approval of the auction contract, but instead
offered the following noncommittal statement:

> Obviously the estate had a right to have this property advertised properly
> and for no misrepresentations to be made about it. And so the Court,
> obviously, in exercising its discretion with regard to approving or not
> approving the contract, we submit, should bear this misrepresentation in
> mind.

DE 73-7 at 4-5.[18] Justifiably confused by this posture, Judge Kennedy directed counsel to

explain how such an equivocal position could be asserted during a contract approval

hearing, a proceeding in which a party either consents or objects to the offered contract:

| Judge Kennedy: | [A]ren't you ... asking the Court to speculate as to whether or not this property would have brought a higher price had it been formally advertised as containing more square footage than was actually advertised? |
|---|---|
| Counsel: | I'm not ... asking the Court to make a finding of that nature, I'm just simply pointing out what I think is an obvious truth. |
| Judge Kennedy: | How should that ... impact what this Court does? |
| Counsel: | I don't think it should, Your Honor. |

*Id.* at 12-13. Counsel for Plaintiff then proceeded to request that Judge Kennedy approve

the contract in order to "allow these other issues to go forward and be resolved as they

will be in federal court." DE 73-7 at 5. But Plaintiff is not at liberty to employ the federal

courts as a review mechanism by which she may discreetly undermine the probate court's

approval of the contract at issue, and thus its role in probating the Estate. *See Osborn*,

865 F.3d at 435 (noting that federal jurisdiction is destroyed when a plaintiff "seeks to set

aside a will or appropriate assets that were distributed by a probate court (or their cash

---

[18] This statement is not the only instance in which counsel for Plaintiff uses "the Estate" and Plaintiff interchangeably in representations made to a court. It is apparent to the undersigned that a source of confusion throughout this litigation, and therefore a likely cause of the current predicament, has been Plaintiff's failure to consistently distinguish between claims belonging to her and those belonging to the Estate.

Case 3:14-cv-02036   Document 260   Filed 09/21/18   Page 17 of 43 PageID #: 3324

equivalents)"). In fact, Plaintiff's request for damages based on the amount she alleges the property should have been sold for appears to contravene the stated policy behind the probate exception. *See Wisecarver*, 489 F.3d at 751 (to award plaintiff money damages equal to the amount of the probate disbursement "is precisely what the probate exception prohibits because it would require the district court to dispose of property in a manner inconsistent with the state probate court's distribution of the assets").

Plaintiff's cause of action is therefore most accurately labeled as *quasi in rem*, which is defined as an action "brought against the defendant personally, with jurisdiction based on an interest in property, the objective being to deal with the particular property or to subject the property to the discharge of the claims asserted." *Black's Law Dictionary* (10th ed. 2014). Notably, Plaintiff filed this federal lawsuit prior to the probate court approval hearing, which means that her *quasi in rem* action was commenced while the probate court was still exercising *in rem* jurisdiction over the property at issue. The Sixth Circuit has recently held that such a scenario precludes the federal court from assuming jurisdiction: "[W]e now hold that the probate exception does not divest a federal court of subject-matter jurisdiction *unless a probate court is already exercising in rem jurisdiction over the property at the time that the plaintiff files her complaint in federal court.*" *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 804 (6th Cir. 2015) (emphasis added). Because Plaintiff commenced this action while the probate court continued to assert *in rem* jurisdiction over the property in question, her claim should be dismissed.

The Court pauses to address Plaintiff's reliance on the Sixth Circuit's decision in *Reed v. Robilio*, in which an heir was permitted to pursue a claim for breach of fiduciary duty against the executor of her father's estate based on the executor's concealment of

material facts relating to a partnership formerly owned by her father. 376 F.2d 392, 393 (6th Cir. 1967). Plaintiff claims that the *Reed* opinion justifies her current position as a beneficiary filing suit against an executor (DE 259 at 16), yet *Reed* merely endorses the notion that parties should be aligned according to the primary dispute at issue, and not the complaint's arrangement of parties. 376 F.2d at 394. It does not provide a mechanism capable of overcoming the jurisdictional hurdles posed by the probate exception in this case. Moreover, in allowing the *Reed* plaintiff to proceed in federal court based on diversity jurisdiction, the Sixth Circuit emphasized plaintiff's status as the *sole* beneficiary to the estate at issue. *See id.* at 397 ("In these circumstances, permitting appellant to litigate the asserted claim (*which will, in effect, benefit only appellant if successful, she being the sole heir*) in a federal court would certainly appear to be appropriate in light of the historical and theoretical justification for diversity jurisdiction.") (emphasis added). Mr. Sorace's status as a co-beneficiary to the Estate thus renders the *Reed* holding inapposite here.

Plaintiff has framed the instant lawsuit as a negligence claim against Ms. Mathes for failure to obtain "fair market value" for certain property, but the conduct at issue yielded a result that the probate court sanctioned and both parties accepted, irrespective of any assignment of fair market value. *Cf. Wozniak*, 2006 WL 4512815, at *4 (noting that the plaintiff beneficiary's attempt to "[r]ecast[] the language of the suit as a RICO claim does not alter the landscape of the case which implores the Court to interfere with a state probate proceeding"). Plaintiff has instead sought the equivalent of a valuation of the property sold at auction, which is not available for review by a federal court. *See Michigan Tech Fund v. Century Nat. Bank of Broward*, 680 F.2d 736, 741 (11th Cir.

1982) ("[A] valuation of estate assets … is precluded by the probate exception.") (citing *Turton v. Turton*, 644 F.2d 344, 374 (5th Cir. 1981)). Her allegations, as stated in the amended complaint, implicate the probate exception because they require the district court to weigh the merits of the probate court's approval of the contract price. *See Mercer v. Bank of New York Mellon, N.A.*, 609 F. App'x 677, 679 (2d Cir. 2015) ("Although Plaintiffs have styled their claims in this case as "in personam" claims against Defendants for breach of fiduciary duty … we must examine the substance of the relief that Plaintiffs are seeking, and not the labels they have used.") (citing *Lefkowitz*, 528 F.3d at 107). There is simply no way to interpret the jury's conclusion that Defendant committed negligence in the course of her role as administrator C.T.A., specifically by failing to sell the Estate for $430,000, as anything other than a challenge to the probate court's administration of *res* that was within its control. Because it is well settled that federal courts do not have such probate jurisdiction, *Bedo v. McGuire*, 767 F.2d 305, 306 (6th Cir. 1985), the undersigned must recommend that this matter be dismissed.[19]

The undersigned is well aware of the ramifications of this finding, if adopted by the district judge. It is certainly lamentable that the parties have contentiously litigated this matter for so many years without the benefit of subject matter jurisdiction, and particularly disappointing that Defendant has only now, after receiving an unfavorable verdict at trial, filed a motion that challenges Plaintiff's assertion of jurisdictional conformity. However, such sentiments play no role in the instant analysis, as it is the

---

[19] The Court notes that dismissal of this federal action would not bar the filing of an analogous state court suit. *See* Tenn. Code Ann. § 28-1-115 ("Notwithstanding any applicable statute of limitation to the contrary, any party filing an action in a federal court that is subsequently dismissed for lack of jurisdiction shall have one (1) year from the date of such dismissal to timely file such action in an appropriate state court.").

Court's duty to consider subject matter jurisdiction at any point regardless of whether either party contests it. *See Days Inns Worldwide*, 445 F.3d at 904 ("[T]he parties cannot confer subject-matter jurisdiction where it does not otherwise exist.") (citing *Sweeton v. Brown*, 27 F.3d 1162, 1168-69 (6th Cir. 1994)). Plaintiff has for several years alleged and successfully litigated a claim that has required the district court to improperly "elbow its way into" a matter that belongs to the state court. *Chevalier*, 803 F.3d at 802 (internal citation omitted). For this reason, the undersigned has no choice but to recommend dismissal of Plaintiff's claim.

### B. Motion for Judgment as a Matter of Law, or, Alternatively, for a New Trial.[20]

The Federal Rules of Civil Procedure allow a party to renew a previously denied motion for judgment as a matter of law within 28 days of the entry of judgment following trial. *See* Fed. R. Civ. P. 50(b). A diversity case, such as the instant one, requires the district court to apply the standard of review used by the courts of the state whose substantive law governs the action if the motion challenges the sufficiency of the evidence presented at trial. *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 466 (6th Cir. 2009) (citing *Kusens v. Pascal, Co.*, 448 F.3d 349, 360 (6th Cir. 2006)). Plaintiff's brief makes such a challenge, thus making Tennessee law applicable, which requires the court to "take the strongest legitimate view of the evidence favoring the opponent of the motion, and [] accept all reasonable inferences in favor of the nonmoving party." *Biscan*

---

[20] If the undersigned's conclusions as to Defendant's motion to dismiss are adopted by the district judge, the motion for judgment as a matter of law will be rendered moot. However, in light of the possibility that the district judge will decline to adopt this recommendation, the Court addresses the merits of the motion for judgment as a matter of law.

*v. Brown*, 160 S.W.3d 462, 470 (Tenn. 2005) (internal citation and quotations omitted).[21] The motion may be granted only if the court determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." *Id*. The court is not permitted to "weigh the evidence or determine the preponderance of the evidence." *Mairose v. Fed. Exp. Corp.*, 86 S.W.3d 502, 511 (Tenn. Ct. App. 2001). Of note, a renewed post-trial motion under Rule 50(b) may only proffer arguments that were advanced in the pre-verdict motion. *Ford v. Cty. of Grand Traverse*, 535 F.3d 483, 491-92 (6th Cir. 2008).

A motion for judgment as a matter of law may include an alternative request for a new trial pursuant to Rule 59. *See* Fed. R. Civ. P. 50(b). In diversity cases, federal law governs the district court's determination as to whether a new trial should be granted. *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000). A new trial is warranted only when a jury has reached a "seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, *i.e.*, the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996) (internal citations and quotations omitted). However, the court is "not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *Barnes v. Owens-Corning Fiberglas Corp.*, 201 F.3d 815, 821 (6th Cir. 2000) (citing *Duncan v. Duncan*, 377 F.2d 49, 52 (6th Cir. 1967)). If a reasonable

---

[21] In Tennessee, a motion for judgment notwithstanding the verdict is the state-law equivalent of a federal motion for judgment as a matter of law. *Medlin v. Clyde Sparks Wrecker Serv., Inc.*, 59 F. App'x 770, 774 (6th Cir. 2003) (internal citation omitted).

juror could reach the challenged verdict, a new trial is improper. *Id.* (citing *Holmes*, 78 F.3d at 1048).

Also pertinent to the undersigned's analysis is Tennessee precedent regarding claims of negligence, which require a plaintiff to prove: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct falling below the applicable standard of care amounting to a breach of that duty; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal cause." *Kellner v. Budget Car & Truck Rental, Inc.*, 359 F.3d 399, 403 (6th Cir. 2004) (quoting *Bennett v. Putnam County,* 47 S.W.3d 438, 443 (Tenn. Ct. App. 2000)).

The Court first addresses Defendant's arguments for judgment as a matter of law. It is undisputed by the parties that Defendant, as administrator of the Estate, owed Plaintiff a duty of care that required her "to demonstrate good faith and to exercise that degree of diligence, prudence, and caution which a reasonably prudent, diligent, and conscientious business person would employ in the management of their own affairs of a similar nature." *Wood v. Lowery*, 238 S.W.3d 747, 758 (Tenn. Ct. App. 2007) (internal citations omitted). The Court may therefore grant the motion only if it finds that reasonable minds could only come to one conclusion: that Defendant did not breach this duty.

Defendant makes three contentions as part of her motion: (1) that there is no competent evidence of a breach of duty; (2) that there is no competent evidence that Defendant's conduct was a factual or legal cause of any injury to Plaintiff; and (3) that there is no competent evidence of any damages suffered by Plaintiff. DE 255 at 1-8. Defendant's argument regarding a breach of duty first appeared in her motion for

summary judgment and was rejected by former Chief District Judge Sharp. *See* DE 89. In denying Defendant's motion, Judge Sharp noted that a jury could find that Defendant breached her duty of care by failing to adequately research the property at issue, examine her own files pertaining to the Estate, or properly supervise the auctioneer with respect to the sale of the property. *Id*. at 14-15. The jury ultimately made such a finding based in part on testimony that Defendant failed to review an appraisal of the house in question prior to the auction. *See* DE 252 at 74-78. Defendant claims that it "was uncontroverted that Ms. Mathes never received the 2011 appraisal until the [current] lawsuit was filed" (DE 255 at 4), yet the attorney who procured the appraisal, Christina Norris, testified that she in fact emailed the appraisal directly to Defendant. DE 252 at 76-77, 81. Defendant's flaccid justification that she did not receive the appraisal because "her old computer and e-mail server would not download large attachments" (DE 255 at 4) fails to convince the undersigned that a reasonable mind could only find in favor of Defendant on this issue.[22]

Defendant's argument with respect to causation is similarly unconvincing. Understandably, Defendant attempts to shift culpability for the alleged underselling of the property to Colson, who published the misinformation regarding the square footage of the house in question. Unfortunately for Defendant, it is Colson's testimony at trial, and not his role in mishandling the advertisement, that undermines her position. Colson provided multiple inconsistent statements before eventually conceding, in response to questions

---

[22] Notwithstanding the fact that this justification was, contrary to Defendant's assertion otherwise, specifically controverted, Defendant's position would require the undersigned to weigh the credibility of witness testimony, which is explicitly prohibited in considering a motion for judgment on the law. *See Radvansky v. City of Olmsted Falls*, 496 F.3d 609, 614 (6th Cir. 2007) (internal citation omitted).

from counsel for Plaintiff regarding Colson's sworn affidavit, that auctioneers typically rely on information contained in appraisal reports in the scope of their duties:

> Counsel: Do you say, in paragraph 13, quote: "In Middle Tennessee, it is customary and usual practice for an auctioneer to rely upon information published in a previous property appraisal," closed quote?
>
> Colson: Yes.
>
> Counsel: That's a true statement, isn't it?
>
> Colson: Yes.

DE 252 at 93. Colson also confirmed that he would have utilized the information from the appraisal report had he been aware of its existence. *Id*. at 103, 122. For purposes of the instant motion, this alone is sufficient to support the jury's decision. *See Holmes v. Wilson*, 551 S.W.2d 682, 685 (Tenn. 1977) (the court is required to deny a motion for judgment as a matter of law if "there is any doubt as to the conclusions to be drawn from the whole evidence")

Defendant's assertion that Plaintiff suffered no harm as a result of any alleged negligence is without merit for similar reasons. Colson testified that the public auction sale of real property will generally yield a value equivalent to its fair market value if the property is properly advertised. DE 252 at 86-87. It is undisputed that the property was inaccurately advertised, and that two appraisals estimated the value of the property at $480,000 and $430,000, respectively, both of which are significantly higher than the $315,000 amount derived from the auction. Given that all reasonable inferences must be drawn in favor of Plaintiff, *Arms*, 731 F.2d at 1249, the Court finds that a reasonable mind could conclude that such evidence sufficiently establishes that Defendant's negligence caused harm to Plaintiff, as a beneficiary to the Estate. While Defendant

makes reasonable arguments that the totality of the evidence favors her argument, the undersigned is not in a position to reweigh such evidence when considering a motion for judgment as a matter of law. *See Radvansky*, 496 F.3d at 614.

Turning to the request for a new trial, Defendant lists 13 grounds on which she claims that a new trial is warranted: (1) that she is immune from suit as a public administrator for Davidson County, Tennessee; (2) that the Court lacks subject matter jurisdiction due to a lack of diversity; (3) that Plaintiff is collaterally estopped from re-litigating any issue relating to the value of the property in question; (4) that it was prejudicial error to allow proof at trial of the 2011 appraisal, the 2015 appraisal, and the testimony of Richard Exton; (5) that the verdict is against the weight of the evidence; (6) that the verdict is unsupported by any competent evidence of breach of duty; (7) that the verdict if unsupported by any competent evidence of causation; (8) that the verdict is unsupported by any competent evidence of injury or damage; (9) that the jury's determination as to damages was arbitrary and capricious; (10) that it was prejudicial error to "permit counsel for the Plaintiff to continually ask questions that constituted his own testimony as a witness" to the proceeding; (11) that it was prejudicial error to refuse to implement the jury instructions requested by Defendant; (12) that it was prejudicial error to refuse to utilize the special verdict form requested by Defendant; and (13) that the combination of these errors was unfairly prejudicial. DE 238 at 2-3.

The Court first notes that two of Defendant's arguments, those involving immunity and collateral estoppel, are subject to waiver. The Sixth Circuit has made clear that a Rule 50(b) motion "is not available at anyone's request on an issue not brought before the court prior to submission of the case to the jury." *Ford*, 535 F.3d at 491

(quoting *Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 160 (6th Cir. 1997)). As stated in the Advisory Committee Notes to the 2006 Amendment to Rule 50:

> Because the Rule 50(b) motion is only a renewal of the preverdict motion, it can be granted only on grounds advanced in the preverdict motion. The earlier motion informs the opposing party of the challenge to the sufficiency of the evidence and affords a clear opportunity to provide additional evidence that may be available. The earlier motion also alerts the court to the opportunity to simplify the trial by resolving some issues, or even all issues, without submission to the jury.

Defendant's initial Rule 50(a) motion was made orally at trial and entailed three arguments: (a) that there was no evidence at trial of any breach of duty; (b) that Plaintiff produced no evidence that Defendant's conduct constituted either legal or factual causation; and (c) that Plaintiff produced no evidence that she suffered any damages. DE 254 at 47-52. Neither immunity nor collateral estoppel was raised as part of this motion, therefore such arguments cannot be entertained by the Court. *See Kay v. United of Omaha Life Ins. Co.*, 709 F. App'x 320, 328 (6th Cir. 2017) ("[A] defendant may not base a Rule 50(b) motion on a legal theory not previously raised in a Rule 50(a) motion.") (internal citation omitted). Defendant *did* raise collateral estoppel and immunity as part of her motion to reconsider the district judge's ruling on her first motion for summary judgment and her second corrected motion for summary judgment. *See* DE 194. However, the Sixth Circuit has held that raising arguments in a summary judgment motion, even when such motions are made prior to trial, does not preserve the arguments for purposes of a Rule 50(b) motion. *See Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010) ("[E]ven if a defendant raises qualified immunity at summary judgment, the issue is waived on appeal if not pressed in a Rule 50(a) motion.") (internal citations omitted).

The Court acknowledges Defendant's attempt to circumvent this prohibition by inserting these arguments under the "Motion for a New Trial" section of her motion. DE 238 at 2-3. This tactic has not been lost on Plaintiff, who correctly notes that the appropriate remedial course of action for such theories would be to grant judgment as a matter of law, instead of permitting a new trial to proceed. Defendant has failed to address this circumstance, via reply brief or otherwise, therefore a finding of waiver is appropriate.

Furthermore, despite including a header in her brief labeled "[i]t was prejudicial error to permit any evidence of the 2011 appraisal ..." (DE 255 at 16), Defendant makes no actual argument with respect to the 2011 appraisal. Any assertion of error relating to the 2011 appraisal is therefore also waived. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that ... arguments adverted to in only a perfunctory manner[] are waived.").

The Court instead turns to the arguments that Defendant has successfully preserved for purposes of her Rule 50 motion. Relying on Rule 702 of the Federal Rules of Evidence, which requires the testimony of a proffered expert to be based on reliable principles and methods, Defendant argues that it was prejudicial error to permit any evidence of the 2015 appraisal or Mr. Exton's accompanying testimony at trial. DE 255 at 16-19. Notably, the district court is given "considerable leeway in deciding in a particular case ... whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Defendant's brief essentially reiterates arguments she set forth in a previous motion in limine (*see* DE 197), all of which were rejected by the district judge. *See* DE

219. The Court certainly agrees with Defendant's assertion that the 2015 appraisal represents questionable evidence for a number of reasons: the appraisal took place six months after the auction (DE 253 at 25); the appraisal consisted of Mr. Exton simply driving around the property without exiting, or even stopping, his car (*id*. at 29-30); and Mr. Exton's testimony that the appraisal was "conditioned on the assumption that [the property] was in similar condition" as it was in 2011 (*id*. at 25-26) would appear to render the appraisal unreliable in light of Ms. Smart's testimony that she and her husband spent more than $150,000 following their purchase at the auction to "bring [the] house up to livability." DE 254 at 11.

Nevertheless, counsel for Defendant was given the opportunity to address these shortcomings during cross-examination of Mr. Exton and present countervailing evidence, as was proper. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (citing *Rock v. Arkansas,* 483 U.S. 44, 61 (1987)). Mr. Exton had previously visited and examined the property in connection with the 2011 appraisal and sufficiently justified the basis for the conclusions contained in the 2015 appraisal. DE 253 at 7-8, 15-16. As a sister court has noted, real estate appraisal "is not an exact science and [] considerable judgment on the part of the individual appraiser enters into the evaluation process." *U.S. ex rel. Tenn. Valley Auth. v. Easements & Rights-of-Way over a total of 3.92 acres of land, more or less, in Greene Cty., Tenn.*, No. 2:07-cv-142, 2010 WL 3861053, at *6 (E.D. Tenn. Sept. 24, 2010). The Court agrees and

accordingly finds no error in the district judge's decision to permit the 2015 appraisal and Mr. Exton's testimony into evidence.

Defendant next argues briefly that the jury verdict is against the weight of the evidence. DE 255 at 19-20. The argument largely echoes her position regarding damages, discussed *supra*, in which Defendant stresses the lack of evidence regarding any potential buyer's unwillingness to attend the auction due to the inaccurate advertisement. However, evidence at trial included testimony that Defendant received a copy of the 2011 appraisal which she failed to relay to Colson (DE 252 at 72-77), as well as Defendant's own testimony that she took no steps to ensure that the marketing and advertising materials were accurate prior to the auction. DE 253 at 62. The jury was permitted to conclude that such actions constituted a failure to act as a reasonably prudent businessperson, a finding to which the Court must defer. *See Barrow v. City of Cleveland*, No. 1:16-cv-923, 2018 WL 3014835, at *2 (N.D. Ohio June 15, 2018) ("[W]hen reviewing a motion for a new trial brought pursuant to Fed. R. Civ. P. 59, a court should indulge all presumptions in favor of the validity of the jury's verdict.") (quoting *Brooks v. Toyotomi Co.*, 86 F.3d 582, 588 (6th Cir. 1996)) (internal quotations omitted).

Defendant's next three assertions of error, that the jury verdict is unsupported by evidence of a breach of duty, unsupported by evidence of causation, and unsupported by evidence of injury or damage, involve the same arguments she proffered as part of her motion for judgment as a matter of law. Indeed, Defendant simply lists each of these assertions as separate headers with a statement indicating that "Ms. Mathes adopts and reiterates her arguments contained in" the relevant previous paragraph. DE 255 at 20. To the extent that Defendant offers the same argument for different standards of review, the

Court declines to construct Defendant's Rule 59 arguments for her. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones.") (internal citation omitted). Alternatively, the Court relies on its previous rejection of these arguments, as discussed *supra*.

Defendant's claim that the damages finding was arbitrary and capricious is similarly unpersuasive. As previously discussed, the undersigned finds no error in the district judge's decision to allow into evidence the 2015 appraisal, which apparently served as the jury's benchmark for determining the amount of damages suffered by Plaintiff. While there was no explanation offered for the jury's decision to award $114,167 instead of an even $115,000, the Court finds it would be unreasonable to vacate this determination based on this aberrant $833 difference, which amounts to less than 0.73% of the total award. *Cf. Samuelson v. Cent. Nebraska Pub. Power & Irrigation Dist.*, 125 F.2d 838, 840-41 (8th Cir. 1942) ("[W]e clearly would not be justified in declaring arbitrary and capricious a general verdict, which, as has been indicated, was within the range of the total damages estimated by some of the expert witnesses[.]"). This is especially true given that the $833 discrepancy favors Defendant.

Defendant's next stated basis for a new trial, that "[i]t was prejudicial error to permit counsel for the Plaintiff to continually ask questions that constituted his own testimony as a witness" (DE 238 at 3), is not accompanied by any argument in the supporting brief. One can reasonably assume that Defendant either inadvertently neglected to provide an appurtenant discussion of her position or simply concluded that such discussion would prove futile. In either case, the argument is waived.

Defendant's final two substantive arguments involve jury instructions, with Defendant first asserting that the District Judge erred by failing to include three items in the instructions: (a) that vicarious liability was not an available claim against Ms. Mathes; (b) that fair market value has no relationship to the price derived from an auction sale; and (c) that the price obtained in a commercially reasonable sale conclusively establishes the value of the property.

Although Defendant fails to cite any authority in support of her position, the Court notes that the relevant question is "whether, taken as a whole, the instructions adequately inform the jury of the relevant considerations and provide the jury with a sound basis in law with which to reach a conclusion." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1074 (6th Cir. 2015) (quoting *Pivnick v. White, Getgey & Meyer Co., LPA,* 552 F.3d 479, 488 (6th Cir. 2009)). An erroneous jury instruction warrants a new trial only if it is "confusing, misleading, and prejudicial." *Id*. Additionally, failure to give a properly requested jury instruction will not constitute reversible error if the error is harmless. *Simmons v. Napier*, 626 F. App'x 129, 138 (6th Cir. 2015) (internal citations omitted).

The undersigned finds no error in the district judge's decision to omit Defendant's proposed instruction regarding vicarious liability and Colson's dismissal from the case. Judge Collier's instruction was exceptionally clear and specific in aiming the jury's deliberations at the proper target:

> In considering whether the plaintiff has carried her burden of proof in showing a failure to meet the required standard of care, you, the jury, should focus on the acts or failures to act of Defendant Peggy D. Mathes. The fact that some other party may have been negligent should not, in and of itself, lead you to conclude that defendant was negligent. Another person's negligence, unless it was caused by defendant, by itself, should

> not have any bearing on your consideration of whether the defendant is herself negligent. However, please keep in mind that a failure to act in circumstances where the required standard of care would have called for an act may nevertheless amount to a breach of a duty of care.

DE 254 at 92. Defendant points to no error in this instruction, nor did her attorney at trial, who simply expressed a desire to make the instruction "as clear as we think it ought to be." DE 254 at 35. Defendant's argument is thus based on a more favorable rendering of the law, which does not convince the Court that a new trial is warranted.

Defendant's argument as to the district judge's failure to include an instruction regarding the lack of correlation between fair market value and the auction sale price is similarly unpersuasive. For one, Defendant failed to raise this issue at any point during discussions with Judge Collier regarding the proposed instructions (*see* DE 254 at 33-43), nor did she include the argument in her original brief in support of the motion.[23] Such error precludes her from raising the issue now. *See* Fed. R. Civ. P. 51(b), (c); *see also Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999) ("A party who fails to raise an objection to a verdict form interrogatory or jury instruction prior to jury deliberations waives its right to raise the issue on appeal.") (internal citation omitted).

Moreover, Defendant makes no attempt to demonstrate that Judge Collier's refusal to include this proposed instruction resulted in reversible error, as is required. *See New Breed Logistics*, 783 F.3d at 1074-75 ("An erroneous jury instruction should not be reversed where the error is harmless."). Defendant instead relies on the fact that the Supreme Court "was the source of the instruction" (DE 255 at 22), but fails to identify

---

[23] As previously discussed, Judge Crenshaw ordered Defendant to file a new brief after she failed to procure a transcript in connection with this motion. Defendant appears to have furtively inserted this argument into her second brief and deleted her original argument regarding "an instruction advising the jury of the necessity for the Plaintiff to prove the existence of injury or damages." DE 239 at 16-17.

any authority indicating that a district judge is required to adopt language from a Supreme Court case as part of the jury instruction. To the contrary, the trial court is given considerable latitude in framing jury instructions. *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000). The undersigned also notes that the Supreme Court decision referenced by Defendant specifically limited its holding to mortgage foreclosures, thus rendering the requested instruction largely irrelevant. *See BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 537, n.3 (1994) ("We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures *and forced sales* ... may be different.") (emphasis added).

The Court also finds no error in the trial court's refusal to include an instruction that the price of property obtained through a commercially reasonable sale conclusively establishes the value of such property. Once again, Defendant failed to raise this particular objection on the record at trial, *see* Fed. R. Civ. P. 51(b), (c), which subverts the very purpose of the requirement. *See Atl. Coast Line R. Co. v. Bennett*, 251 F.2d 934, 938 (4th Cir. 1958) (noting that Rule 51 is "designed to give fair notice to the trial judges of the precise nature of the objections to a charge, and it obviates a retrial of cases when by design or through sheer neglect the losing parties fail to raise points during the progress of the case in the trial court"). The argument is therefore waived. Alternatively, Defendant's claim that Judge Kennedy's finding of commercial reasonableness and fairness with respect to the auction sale "should have been the end of the inquiry" (DE 255 at 22) fails to establish that the absence of such instruction was "confusing, misleading, and prejudicial" to the jury, as is required for finding that a new trial is

warranted. *Roberts ex rel. Johnson v. Galen of Virginia, Inc.*, 325 F.3d 776, 787 (6th Cir. 2003).

Likewise, Defendant's final claim regarding Judge Collier's refusal to utilize a special verdict form fails to persuade the undersigned that a new trial is necessary. Defendant does little more than assert generally that the complexity of this case required more than a general verdict form (DE 255 at 22-23), yet the trial of this matter involved a single plaintiff asserting a single claim against a single defendant. Judge Collier provided detailed and meticulous instructions to the jury regarding the elements of negligence and their application to the instant lawsuit. *See* DE 254 at 91-95. This Court has previously noted that general verdict forms "are the norm" under Fed. R. Civ. P. 49, *see Maggard v. Ford Motor Co.*, No. 3:05-0369, 2007 WL 4255272, at *2 (M.D. Tenn. Nov. 30, 2007), *rev'd and remanded on other grounds*, 320 F. App'x 367 (6th Cir. 2009), and the Sixth Circuit has held that the use of a special verdict form is left to the sound discretion of the district judge. *Workman v. Frito–Lay, Inc.,* 165 F.3d 460, 465 (6th Cir. 1999). Because Defendant identifies no errors in Judge Collier's instructions, the Court rejects this argument. *See King*, 209 F.3d at 897 (in diversity action, district court has discretion "to instruct the jury in any manner it deem[s] appropriate, as long as it correctly stated [the applicable state's] substantive law, instructed on the issues relevant to the case at hand, and did not mislead the jury").

The Court also rejects Defendant's catchall argument that the cumulative impact of her assertions of error necessitates a new trial. A new trial should be granted only to prevent a "miscarriage of justice," *Fryman v. Federal Crop Ins. Corp.,* 936 F.2d 244, 248 (6th Cir. 1991), and only if the jury failed to return a verdict that "reasonably could be

reached, regardless of whether the trial judge might have reached a different conclusion were he the trier of fact." *Powers v. Bayliner Marine Corp.*, 83 F.3d 789, 796 (6th Cir. 1996) (internal citation omitted). The Court finds no such circumstances in the instant matter, and therefore recommends denial of Defendant's motion.

### C. Plaintiff's Motion for Attorney's Fees, Expenses, and Prejudgment Interest.

The Court now turns to Plaintiff's motion for attorney's fees, expenses, and prejudgment interest, in which Plaintiff requests $178,905.00 in fees, $11,029.56 in expenses, and $32,873.78 in prejudgment interest on the jury award, for a total award of $222,808.34. DE 230. Plaintiff divides her brief into two separate arguments, one for "attorney's fees and expenses" and one for prejudgment interest. DE 232 at 2, 4. The undersigned will address each argument in turn.

An award of attorney's fees in federal court is generally the result of a party prevailing under one of the federal fee-shifting statutes. *See, e.g.,* 42 U.S.C. § 1988(b). However, when a district court sits in diversity jurisdiction, requests for attorney's fees are governed by state law. *Hometown Folks, LLC v. S & B Wilson, Inc.,* 643 F.3d 520, 533 (6th Cir. 2011). Tennessee follows the so-called "American Rule," which holds that, "in the absence of a contract, statute or recognized ground of equity so providing there is no right to have attorneys' fees paid by an opposing party in civil litigation." *State ex rel. Orr v. Thomas,* 585 S.W.2d 606, 607 (Tenn. 1979).

The undersigned finds no basis in the instant matter to deviate from the well-established standard that civil litigants in Tennessee are required to pay their own attorney's fees. *Baxter Bailey Investments LLC v. APL Ltd. Inc.,* No. W201500067COAR3CV, 2015 WL 5560563, at *10 (Tenn. Ct. App. Sept. 21, 2015).

Plaintiff fails to acknowledge this principle in her brief, instead highlighting a recent case in which the Tennessee Court of Appeals affirmed a trial court's award of attorney's fees based on a trustee's breach of fiduciary duty. *See George v. Dunn*, No. E201502312COAR3CV, 2016 WL 6471334, at *8 (Tenn. Ct. App. Nov. 2, 2016). Yet this case, which involves a claim against a trustee who acted in concert with another individual to deliberately deplete the subject trust's funds, encourages a court to consider the severity of the conduct at issue when reviewing a motion for attorney's fees based on breach of a fiduciary duty.

For example, the *Dunn* court cited its previous decision in *Martin v. Moore*, in which a trial court's award of attorneys' fees was upheld based on the duplicitous behavior of the subject fiduciary's breach of duty, namely a wife's role in withdrawing all of the funds from her husband's banking account and investing them overseas:

> Although attorney fees should not be imposed where there is merely a technical fault on the part of the fiduciary ... *the imposition of such fees on fiduciaries who deliberately use their position of trust to enrich themselves creates a disincentive to such behavior.* The trial court's finding that [the fiduciary] intentionally withdrew her husband's separate funds from his checking account for her sole use and benefit is an appropriate predicate for the trial court's award.

109 S.W.3d 305, 313 (Tenn. Ct. App. 2003) (emphasis added). In contrast, none of the evidence on which the jury based its verdict suggests that Defendant was anything more than inattentive in her role as Administrator C.T.A. There is certainly no indication that Defendant deliberately breached her fiduciary duty or engaged in self-dealing, and therefore minimal support for an award of attorney's fees in this matter. *Cf. Brandt v. Bib Enterprises, Ltd.*, 986 S.W.2d 586, 595 (Tenn. Ct. App. 1998) ("[U]nder the facts of this particular case attorney's fees should not be awarded.").

This finding is bolstered by another decision cited by the *Dunn* court, in which the trial court's denial of attorney's fees based on breach of fiduciary duty was affirmed. *See Marshall v. First Nat. Bank of Lewisburg*, 622 S.W.2d 558 (Tenn. Ct. App. 1981). The court specifically noted the absence of "misconduct or bad faith" by the named fiduciary and ultimately found that because the trustee genuinely believed that the dividends at issue were not owed to the beneficiary, "the fact that the beneficiary ultimately prevailed should not be sufficient in and of itself to authorize an award of attorneys' fees." *Id.* at 560. The Court finds this to be sufficiently analogous to the instant matter, in which Defendant merely failed to prevent the publishing of inaccurate advertisements produced by another party. It is therefore recommended that Plaintiff's request for attorney's fees and expenses be denied. *See id.* at 561 (noting that an award of attorneys' fees is "fairly unusual").

A request for prejudgment interest in a federal diversity case is similarly governed by state law. *Daily v. Gusto Records, Inc.*, 14 F. App'x 579, 591 (6th Cir. 2001). In Tennessee, prejudgment interest "may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum[.]" Tenn. Code Ann. § 47-14-123. An award of prejudgment interest is left to the sound discretion of the trial court, and the court's decision will not be overturned "unless the record reveals a manifest and palpable abuse of discretion." *Spencer v. A-1 Crane Serv., Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994) (internal citations omitted).

The Tennessee Supreme Court's opinion is *Myint v. Allstate Insurance Co.* provides the guiding principles for evaluating a party's request for prejudgment interest:

> Simply stated, the court must decide whether the award of prejudgment
> interest is fair, given the particular circumstances of the case. In reaching
> an equitable decision, a court must keep in mind that the purpose of
> awarding the interest is to fully compensate a plaintiff for the loss of the
> use of funds to which he or she was legally entitled, not to penalize a
> defendant for wrongdoing.

970 S.W.2d 920, 927 (Tenn. 1998) (internal citation omitted). Two other considerations are provided in this opinion: (1) prejudgment interest is allowed "when the amount of the obligation is certain, or can be ascertained by a proper accounting, and the amount is not disputed on reasonable grounds;" and (2) prejudgment interest is allowed "when the existence of the obligation itself is not disputed on reasonable grounds." *Id.*

Plaintiff discusses in detail the alleged shift in Tennessee courts following the *Myint* decision towards an approach favoring the award of prejudgment interest. *See In re Estate of Ladd*, 247 S.W.3d 628, 646 (Tenn. Ct. App. 2007) (noting that prior to the *Myint* decision, "opinions dealing with prejudgment interest left a distinct impression of subtle judicial antipathy toward awarding prejudgment interest unless it was statutorily mandated") (internal citation omitted). However, Plaintiff does little to explain how the facts of the instant case support such an award, which is the "baseline principle" that must be considered by the Court. *DASFortus Techs., LLC v. Precision Prod. Mfg. Co. (Hong Kong)*, No. 3:07-cv-0866, 2011 WL 4625521, at *10 (M.D. Tenn. Sept. 30, 2011). She instead merely asserts that "[f]airness requires that Ms. Mathes compensate Ms. Wildasin for the loss of the use of [the jury award]." DE 232 at 3. The undersigned disagrees.

In support of this finding, the Court notes Defendant makes several arguments in her responsive brief that go unchallenged in Plaintiff's subsequent reply brief. For example, Defendant claims that loss of use of the funds is not a reasonable consideration

since the underlying probate case remains open, which would preclude the disbursement of any funds to Plaintiff related to the sale of the property. DE 240 at 1. Defendant further notes that the funds of which Plaintiff has allegedly been deprived are currently housed in a money market account, accruing interest. *Id.* While such earnings have nothing to do with prejudgment interest, the existence of such gains militates against Plaintiff's contention that "fairness requires" an award of prejudgment interest.

The Tennessee Supreme Court has endorsed awards of prejudgment interest awards when neither the amount nor the existence of the obligation is disputed on reasonable grounds. *Mitchell v. Mitchell*, 876 S.W.2d 830, 832 (Tenn. 1994). Here, however, it cannot be seriously argued that Defendant's opposition to both the alleged damages and the amount in question was unreasonable. The evidence at trial included testimony from Colson, the only person with any experience in the auctioneering business, who testified that it would have been error to postpone the auction notwithstanding the false advertisement of the property, based on the large number of potential buyers who were present at the auction. DE 252 at 106-07. Furthermore, the only apparent foundation for the verdict was the jury's belief that the property in question was worth $430,000 on the day of the auction, which was based on a drive-by assessment performed by Richard Exton six months after this lawsuit was filed. DE 253 at 29. While the undersigned is well aware that Tennessee courts have "devalued" this consideration in reviewing a request for prejudgment interest since the *Myint* case, *Scholz v. S.B. Int'l, Inc.*, 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000), this does not mean that such a consideration is without any value. *See BancorpSouth Bank v. 51 Concrete, LLC*, No. W201301753COAR3CV, 2016 WL 1211433, at *5 (Tenn. Ct. App. Mar. 28, 2016)

(weighing whether subject defendants had "reasonable grounds" for their alleged conduct in assessing whether to grant prejudgment interest to plaintiff). This is especially true in light of Plaintiff's failure to make any substantive argument for her entitlement to prejudgment interest, which weighs against such an award. *See Horton v. State Farm Fire & Cas. Co.*, No. 1:16-cv-59, 2017 WL 1397249, at *5 (E.D. Tenn. Jan. 17, 2017) (denying request for prejudgment interest by plaintiff who failed to "show[] or even argue[] how it was injured by the loss of the insurance payment funds," and instead "simply argued it was entitled to the full value of the policy").

Finally, the undersigned observes the Tennessee Supreme Court's instruction that the purpose of awarding prejudgment interest is "to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing." *Myint*, 970 S.W.2d at 927. As a corollary principle, the Tennessee Court of Appeals has noted that an award of prejudgment interest would be inappropriate when the party seeking such an award has "otherwise been compensated for the lost time value of its money." *Scholz*, 40 S.W.3d 78, 83 (Tenn. Ct. App. 2000). The jury in this case awarded Plaintiff, individually, almost $115,000, which represents the difference between Mr. Exton's assigned appraisal value and the auction sale price. As previously discussed, Plaintiff has therefore successfully recovered an amount that would otherwise be subject to a significant offset (*i.e.* divided in half) due to Mr. Sorace's status as co-beneficiary of the Estate. An award of prejudgment interest would thus serve only to create an impermissible "windfall" to Plaintiff, which the undersigned refuses to sanction. *Alexander v. Inman*, 974 S.W.2d 689, 698 (Tenn. 1998). The Court therefore recommends denial of the request for an award of prejudgment interest.

# III. CONCLUSION

For the above stated reasons, the following is respectfully recommended that Defendant's motion to dismiss (DE 228) be GRANTED and the jury verdict in this matter be VACATED.

In the event that this recommendation is not adopted, the undersigned respectfully recommends that Defendant's motion for judgment as a matter of law, or alternatively for a new trial (DE 238) be DENIED, and that Plaintiff's motion for attorney's fees, expenses, and prejudgment interest (DE 230) be DENIED.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further appeal is waived. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Such objections must be written, must state with particularity the specific portions of the Report and Recommendation to which an objection is made, must not exceed twenty-five (25) pages, and must be accompanied by sufficient documentation including, but not limited to, affidavits, pertinent exhibits, and if necessary, transcripts of the record. M.D. Tenn. R. 72.02(a) Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).



Signed By:

*J. Gregory Wehrman*

United States Magistrate Judge