IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOAN ROSS WILDASIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | NO. 3:14-cv-02036 |
| v. | ) | JUDGE RICHARDSON |
| | ) | |
| PEGGY D. MATHES, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Pending before the Court are a Report and Recommendation (Doc. No. 260), Objections filed by Defendant Mathes (Doc. No. 261), Objections filed by Plaintiff (Doc. No. 262), and a Response to Plaintiff's Objections filed by Defendant Mathes (Doc. No. 264).

**INTRODUCTION**

This case has a long and contentious history. It was filed in October of 2014 and assigned to Magistrate Judge Joe Brown and former District Judge Kevin Sharp. After discovery, numerous dispositive motions, motions to reconsider, and motions in limine, the case was transferred to a visiting district judge, the Honorable Curtis L. Collier.[1] Judge Collier denied Defendant's Motion to Reconsider Judge Sharp's ruling on her first Motion for Summary Judgment and also denied Defendant's second Motion for Summary Judgment. The case went to trial before a jury and Judge Collier in August of 2017 on the one remaining claim, negligence, against Defendant Mathes as Administrator of the Estate of Jane Kathryn Ross. After a jury verdict for the Plaintiff, Defendant

---

[1] About the same time, Magistrate Judge Brown recused himself and the case was assigned to Magistrate Judge Barbara Holmes, who also recused herself. The case was then assigned to Magistrate Judge Chip Frensley.

filed a Motion to Dismiss, raising for the first time the Court's alleged lack of subject-matter jurisdiction. She also filed a Motion for Judgment as a Matter of Law or for New Trial. Plaintiff filed a Motion for Attorneys' Fees, Expenses and Prejudgment Interest. The case was then transferred to Chief Judge Waverly Crenshaw, who referred the pending motions to a visiting magistrate judge, the Honorable J. Gregory Wehrman, who entered the Report and Recommendation now before the Court. The case was transferred to the undersigned on October 22, 2018.

## BACKGROUND

This case arises from the auction of property formerly belonging to the estate of Plaintiff's mother, Jane Kathryn Ross, who died in 2010.[2] Defendant Mathes was appointed Administrator C.T.A. of Ms. Ross's estate ("the Estate") by a Tennessee state probate court. As part of the administration of the Estate in 2011, Defendant obtained a professional appraisal of the property in question. That appraisal indicated that the house on the property consisted of 3,553 square feet of finished, above-grade interior space, with an estimated value of $480,000. As the result of the judgment in a separate lawsuit filed against Ms. Ross's son in the probate court (*see* note 2), the house was sold at a sheriff's auction, and the Estate purchased the house for $325,000. After the Estate purchased the property, Plaintiff moved, in the probate court, to sell the house at a public auction. The probate court granted the motion, and Defendant, as Administrator of the Estate, hired Bill Colson Auction & Realty to facilitate the auction sale. Bobby Colson was designated to serve as the auctioneer responsible for the sale.

---

[2] The property in question was originally owned by Plaintiff's brother, Paul Sorace, who was a co-beneficiary of the Estate. Jane Kathryn Ross, the deceased, had contributed the vast majority of the costs of construction of a house on the property. Through a lawsuit by the Estate against Sorace for unjust enrichment, the Estate got a judgment against Sorace for $417,000.

2

Colson, using a subscription service called RealTracs, obtained a report indicating (incorrectly) that the house consisted of only 2,538 square feet, and he proceeded to post several advertisements for the property that inaccurately identified the house as consisting of approximately 1,000 square feet less than its true size. Defendant did not relay the 2011 appraisal or the information contained therein to Colson and was unaware of Colson's advertisements for the house. She testified that she never looks at the auction company's advertising and that she did nothing to ensure that the advertisements for auctions were accurate (Doc. No. 74 at 50).

The auction sale was set for October 18, 2014, at which time Eugene Bulso, counsel for Plaintiff, advised Colson, before the auction began, that his advertisements were incorrect. Bulso provided Colson with a copy of the 2011 appraisal report that showed the house's size as 3,553 square feet. Colson then announced to all potential bidders that the advertisements were inaccurate and that the property actually consisted of "probably 3,500 square feet." Colson also told the bidders that the 2011 appraisal had valued the home at $480,000, and a previous tax assessment had valued the home at $400,000. No one cancelled the auction after these announcements. The winning bid at the auction was $315,000.

Defendant then moved to approve the auction contract in probate court.[3] The probate court held a hearing on November 7, 2014, concerning judicial approval of the auction contract. At the probate court hearing, no one objected to judicial approval of the auction contract. In fact, as both Judge Sharp and Judge Collier found earlier in this lawsuit, both sides told the probate judge there was no dispute on the basic question of approving the contract. Plaintiff's counsel told the probate judge that approving the contract was "the better course," since neither side wanted the property

---

[3] Plaintiff filed this action on October 28, 2014, after the auction of the property, against Defendant Mathes and her law firm and the auction company.

itself to be embroiled in litigation.[4] Despite a request for the probate court to acknowledge that $315,000 was the current fair market value of the property, Judge Kennedy of that court expressly *refused* to do so. He simply approved the auction sale price as "fair and reasonable" based on all the circumstances and noted that $315,000 was a "commercially reasonable price."

In this action, Plaintiff, as a beneficiary of the Estate, alleged that Defendant Mathes committed negligence as Administrator of the Estate, that she committed negligence as legal counsel, and that the auction company committed negligence and negligence *per se*. The Court granted summary judgment to Defendant Mathes as to the negligence-as-legal-counsel claim but left the negligence-as-Administrator claim intact.[5] The Court also dismissed Plaintiff's claim against Mathes' law firm. Doc. Nos. 109-110. The parties later stipulated to the dismissal of all claims against the auction company. As noted above, the remaining claim against Defendant Mathes went to trial before Judge Collier on August 15, 2017, and resulted in a jury verdict for Plaintiff in the amount of $114,167.

The parties then filed the pending post-trial motions, which were referred to Magistrate Judge Wehrman for a Report and Recommendation. Defendant argued, for the first time, that the Court had no subject-matter jurisdiction, based on the lack of complete diversity, because the Estate was the real party in interest, and the Estate was considered to be a resident of Tennessee.[6] As the Magistrate Judge noted, that argument was "monumentally tardy." The Magistrate Judge found that because Plaintiff's negligence claim involved an alleged breach of duty as to Plaintiff

---

[4] Doc. No. 89 at 6-7; Doc. No. 194 at 5-6.

[5] Both Judge Sharp and Judge Collier rejected Defendants' argument that Plaintiff was collaterally estopped, by the probate court's order approving the sale, from arguing that the value of the property is greater than $315,000. Doc. Nos. 89 and 194.

[6] Plaintiff is a resident of California.

4

as a *beneficiary*, not as a representative of the Estate, Defendant's argument about the lack of complete diversity had no merit (Doc. No. 260 at 7-9). No one has objected to that portion of the Report and Recommendation, and the Court agrees with its findings. Thus, this action is not subject to dismissal based on (the alleged) lack of diversity.

The Report and Recommendation nevertheless recommends that Defendant's Motion to Dismiss be granted, but not for the reason argued by Defendant. Rather, the Magistrate Judge *sua sponte* concluded that the Court lacked subject-matter jurisdiction based upon the "probate exception." He recommended that the jury verdict be vacated; that this action be dismissed; and that Plaintiff's motion for attorney's fees be denied.

Plaintiff objects to the Magistrate Judge's recommendation that the case be dismissed for lack of subject-matter jurisdiction and the recommendation that her motion for attorney's fees and request for prejudgment interest be denied. Defendant objects to the Magistrate Judge's recommendation that her alternative Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial be denied.

## **STANDARD OF REVIEW**

The pending motions were referred to the Magistrate Judge for a Report and Recommendation, as provided in Fed. R. Civ. P. 72(b)(1) and 28 U.S.C. § 636(b)(1)(A) and (3). Although a motion to dismiss for lack of jurisdiction is typically filed prior to trial, the pending dispositive motions nevertheless fall within the "additional duties as are not inconsistent with the Constitution and laws of the United States" portion of Section 636(3). In other words, these motions could properly be referred to the Magistrate Judge for a Report and Recommendation to the district judge. The district court must review *de novo* any portion of the report and recommendation to which a proper objection is made, and may accept, reject, or modify the

recommended disposition, review further evidence, or return the matter to the magistrate judge with instructions. 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 72(b)(3).

## **ANALYSIS**

Noting that the Court has an independent duty to inquire any time a doubt arises about the Court's subject-matter jurisdiction,[7] the Magistrate Judge *sua sponte* raised the issue of subject-matter jurisdiction and found that the Court lacked subject-matter jurisdiction over this action because of the "probate exception." As noted above, accepting Magistrate Judge Wehrman's recommendation would entail granting Defendant's Motion to Dismiss and vacating the jury award entered in this case.

<u>Subject-Matter Jurisdiction</u>

Plaintiff objects to the Report and Recommendation on grounds that this Court already found jurisdiction to be proper, citing to the Final Pretrial Order and the Initial Case Management Order. But the Initial Case Management Order stated only that jurisdiction was based upon diversity of citizenship (Doc. No. 28) and the Final Pretrial Order stated only that jurisdiction was invoked pursuant to 28 U.S.C. § 1332 and *Marshall v. Marshall* and that jurisdiction was not disputed (Doc. No. 218). No one asked the Court to find a lack of subject-matter jurisdiction until after the trial, and the Court did not address it until the Report and Recommendation. Moreover, simply *alleging* in the Complaint or Amended Complaint that jurisdiction is proper does not make it so. Likewise, invocation of jurisdiction on a particular basis does not mean that the basis is valid.

---

[7] Fed. R. Civ. P. 12(h)(3); *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 904 (6th Cir. 2006) (existence of subject-matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself).

Finally, the absence of a dispute as to subject-matter jurisdiction at a particular time does not render subject-matter jurisdiction conclusively established.

The so-called "probate exception" to this Court's jurisdiction reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.[8] *Marshall v. Marshall*, 547 U.S. 293, 311-312 (2006). But the probate exception does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction. *Id*. at 312. The probation exception is narrow, and federal courts are able to handle suits against a decedent's estate as long as the federal court does not interfere with the probate proceedings or take jurisdiction over the probate itself or of the property that is in the custody of the state probate court. *Cartwright v. Estate of Peterson*, Case No. 3:17-cv-01464, 2018 WL 4945232, at * 2 (M.D. Tenn. July 2, 2018).

The Sixth Circuit has agreed with other circuits that the probate exception is narrowly limited to three circumstances: (1) if the plaintiff seeks to probate a will; (2) if the plaintiff seeks to annul a will; and (3) if the plaintiff seeks to reach the *res* over which the state court has custody. *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 801 (6th Cir. 2015). A case does not fall under the probate exception if it merely impacts a state court's performance of one of these tasks. *Id.* In *Chevalier*, the Court made a distinction between *in-personam* actions and *in-rem* actions: an *in-personam* action is an action brought against a person rather than property, and the judgment is binding on the judgment-debtor and can be enforced against all the property of the judgment-debtor. *Id*. at 801-802. An *in-rem* action is an action determining the title to property and the rights

---

[8] No party has advised the Court of the status of the Estate in the state probate court, either at the time of trial or now.

7

of the parties, not merely among themselves, but also against all persons claiming an interest in that property. *Id*.

The Magistrate Judge stated that Plaintiff's cause of action was most accurately labeled as *quasi in rem*, which means, according to Black's Law Dictionary, an action brought against the defendant personally, with jurisdiction based on an interest in property, the objective being to deal with the particular property or to subject the property to the discharge of the claims asserted (Doc. No. 260 at 18). Here, the action was brought against the Defendant personally, and the Court has *in-personam* jurisdiction, based on a negligence claim. The Court is not attempting to take *in-rem or quasi-in-rem* jurisdiction over *any* property, in custody of the probate court or otherwise. There is no objective in this action to deal with any particular property or subject any property to the discharge of the claims asserted.

In *Chevalier*, cited by the Magistrate Judge, the court found that the plaintiff's claims for breach of contract, default, unjust enrichment and fraud were *in-personam* actions and were not barred by the probate exception. In addition, the court, citing Ohio law, found that the plaintiff's claim for imposition of a constructive lien on real property of the decedent was also an *in-personam* action, and the court had no need to exercise *in-rem* jurisdiction to enter a judgment on that particular claim. Finally, the court held that the plaintiff's claim seeking foreclosure on the decedent's property *did* require the court to exercise *in-rem* jurisdiction over the property at issue. *Chevalier*, 803 F.3d at 802.[9]

---

[9] Because the federal complaint was filed before the state probate court had assumed *quasi-in-rem* jurisdiction over the property, however, the court ultimately found that the probate exception did not apply to the foreclosure claim. *Chevalier*, 803 F. 3d at 804.

*Chevalier* held that the probate exception does not divest a federal court of subject-matter jurisdiction "unless a probate court is already exercising *in rem* jurisdiction[10] over the property at the time that the plaintiff files her complaint in federal court." *Id*. at 804 (cited by the Magistrate Judge, Doc. No. 260 at 18). Here, this action was filed *after* a bid was accepted at the auction sale, but before the sale was judicially approved. Even though technically the real estate was still within the jurisdiction of the probate court at the time this action was filed, rights to the real estate are not at issue in this action, and this lawsuit does not require the Court to assert jurisdiction over that real estate or over *any* property in the probate court, for that matter. Plaintiff does not seek to disturb any money (proceeds from the sale) over which the probate court has exercised control. Plaintiff is not asking that the sale approved by the probate court be invalidated. The money from which Defendant will pay the judgment entered by this Court cannot and will not come from the Estate. This Court is not attempting to exercise control over any asset in the custody or control of the probate court. Thus, *Chevalier* does not support application of the probate exception in this case.

The Magistrate Judge assigned some importance to the fact that Sorace was Plaintiff's co-beneficiary of the Estate. According to the Magistrate Judge, Plaintiff's status as merely one of two beneficiaries means that Plaintiff cannot be entitled to damages that ostensibly belong to the Estate and thus are subject to distribution to both her *and* Mr. Sorace. (Doc. No. 260 at 16). Relatedly, the Magistrate Judge criticized Plaintiff for failing to distinguish between claims belonging to her and claims belonging to the Estate. (*Id.* at 17 n. 18). Respectfully, however, the Court is unable to see the current significance—especially to the applicability of the probate

---

[10] As noted above, the Magistrate Judge characterized this Court's jurisdiction as *quasi in rem*, not *in rem,* which distinguishes this case from *Chevalier*. Doc. No. 260 at 18.

exception—of this alleged failure and this alleged lack of entitlement to damages supposedly belonging instead to the Estate, especially given that the parties have consistently treated this action as involving claims of Plaintiff herself rather than claims of the Estate, and the Court does not see where Defendant ever objected to this.

The principles underlying the probate exception are not implicated when a federal court exercises jurisdiction over claims seeking *in-personam* jurisdiction based on tort liability, because the claims do not interfere with the *res* in the state court proceedings or ask a federal court to probate or annul a will. *Wisecarver v. Moore*, 489 F.3d 747, 751 (6th Cir. 2007). In *Wisecarver*, the court found that a majority of the relief the plaintiffs sought, including a declaration that the probated will was invalid, would involve disturbing the estate in the probate court. *Id*. Here, the relief sought is an *in-personam* judgment against Defendant Mathes, which would disturb nothing in the custody or control of the probate court.

In applying the probate exception, the court in *Jones v. Brennan*, 465 F.3d 304 (7th Cir. 2006), cited by the Magistrate Judge and by Defendant, stated that when actions are *in rem* in character, they are fights over a thing of value in the probate court's control, and another court "should not try to elbow its way into the fight." *Id.* at 307. *Jones* involved a fight over an estate in the control of the state probate court. *Id*. First, as noted above, the Magistrate Judge found that this case was not *in rem.* Secondly, this Court is not aware of any current "fight" in the probate court over any "thing of value" that is also an issue this case. Moreover, the Court is not attempting to "elbow its way into" anything in the probate court. In *Jones*, the court found that the plaintiff was asking the federal district court to "take over the administration of the estate." *Id*. Clearly, that is not what Plaintiff has asked the Court to do in this case.

Defendant also cites *Cartwright v. Garner,* 751 F.3d 752 (6th Cir. 2014) in support of her argument. *Cartwright* involved the administration of certain trusts under the jurisdiction and control of the state court. The plaintiff had brought his tort claims for undue influence and mismanagement as counterclaims in state court litigation involving trust administration, but then he also filed them in federal court. The Sixth Circuit held that both actions were *in rem* because both courts would require control over the trust funds in order to provide the relief sought by the parties. Since the state court first exercised jurisdiction over the trust funds at issue, the federal court had no jurisdiction over the plaintiff's tort claims. *Id.* at 751-52. Here, there is no state court litigation concerning Plaintiff's allegations against Defendant. To the Court's knowledge, no state court is exercising control over any property that Defendant could use to satisfy the judgment entered against her in this case. And this Court, unlike *Cartwright*, would not have to control any property in the custody of the state court "in order to give effect to resolution" of this case. *Id*. at 762.

In *Osborn v, Griffin*, cited by both the Magistrate Judge and Defendant, the court noted that the probate exception prevents a federal court from *de facto* redistributing probated property by granting a plaintiff its equivalent cash value. *Osborn*, 865 F.3d 417, 436 (6th Cir. 2017). Plaintiff has not asked this Court to redistribute anything; specifically, she is not asking the Court to redistribute property that has already been probated. The *Osborn* court stated: "The probate exception is narrowly focused on preventing federal courts from upending probate proceedings." *Id*. Nothing about this case or its result "upends" the probate proceedings. As the court did in *Osborn*, this Court finds the probate exception inapplicable here because the plaintiff sought an *in-personam* judgment against the defendant, not the probate or annulment of a will and not to reach or disturb a *res* in the custody of the state court. *Id*. Plaintiff seeks from Defendant only an

award of money damages, which is essentially an interest in non-specific property over which the probate court has never exercised jurisdiction.

The probate exception cannot be used to dismiss widely recognized torts merely because the issues intertwine with claims proceeding in the state court. *Lefkowitz v. Bank of New York*, 528 F.3d 102, 108 (2d Cir. 2007) (citing *Marshall*, 126 S. Ct. at 1748). In *Leftkowitz*, as here, the federal court was not asserting control of any *res* in the custody of the state court. *Id*. The Second Circuit found that the probate exception applied to claims in which the plaintiff sought, in essence, disgorgement of funds that remained under the control of the probate court, but not to claims of breach of fiduciary duty in which the plaintiff sought damages from the defendants personally rather than assets or distributions from the estate. *Id.* at 107-08, *cited in Kennedy v. Trustees of Testamentary Trust*, 406 F. App'x 507, 509 (2d Cir. 2010).

Similarly, Plaintiff also seeks damages from Defendant personally, rather than from assets or distributions from the estate. She does not seek an *in-rem* decision and does not seek to set aside or invalidate the sale of the property or to resell the property. Plaintiff is not seeking to probate, administer or annul a will. She is not asking the Court to instruct the probate court to do anything or to determine her rights to any property held by the probate court. She does not seek to receive proceeds from the sale of the house, which are or were a part of the Estate, or to obtain any money or property in the custody of the probate court. Plaintiff has not asked this Court to find fault with any rulings of the probate court.[11] Plaintiff is seeking a judgment against Defendant Mathes for

---

[11] As noted, Judge Kennedy's findings of a "fair and reasonable" price that was "commercially reasonable" do not preclude Plaintiff's claim in this case. Doc. No. 89 and 194. The Court realizes that these terms may seem to align with the notion of "fair market value," but actually they are more amorphous and less specific.

separate and additional money allegedly owed to Plaintiff, as a beneficiary, based on Defendant's negligence.

As the Magistrate Judge recognized, citing *Marshall*, the Court may not probate a will or administer an estate, but it may preside over actions in which a plaintiff seeks an *in-personam* judgment that does not reach a *res* in the custody of a state court (Doc. No. 260 at 10). The probate exception is a practical doctrine designed to promote legal certainty and judicial economy by providing a single forum of litigation and to tap the expertise of probate judges by conferring exclusive jurisdiction on the probate court. *Id*. This Court exercising subject-matter jurisdiction in this case does nothing to thwart those purposes.

The Magistrate Judge stated that Plaintiff had asked this Court to nullify the probate court's administration of the Estate (Doc. No. 260 at 16). Respectfully, the Court disagrees. As explained herein, Plaintiff has not asked the Court to nullify anything the probate court did or refute any rulings of Judge Kennedy. Finding fault with the Administrator is not the same as finding fault with the probate court or Judge Kennedy.

Contrary to the Magistrate Judge's opinion, the probate court's approval of the auction contract specifically does *not* preclude Plaintiff's claim herein, as found by both Judge Sharp (Doc. No. 89 at 9-10) and Judge Collier (Doc. No. 194 at 9). Both judges of this Court found that the probate court expressly did *not* rule on the property's fair market value,[12] so Plaintiff was not collaterally estopped from arguing that the value of the property is greater than $315,000 or from proving fair market value as part of her damages in this action. "No court has determined the house would not have sold for more had it been properly advertised, and thus collateral estoppel does not

---

[12] "Judge Kennedy carefully chose his words to assure the parties that the Order would not constitute a ruling on the home's fair market value." Doc. No. 89 at 10.

apply." Doc. No. 184 at 9. As Judge Sharp found, collateral estoppel prevents re-litigation of factual matters that were fully considered and decided in an earlier proceeding (Doc. No. 89 at 8). Here, the matter of fair market value was specifically *not* considered in the earlier, probate proceeding. This case is not about disagreeing with the probate court, whose finding of "fair and reasonable" does not preclude the validity of Plaintiff's claim that Defendant had a duty to at least try to obtain *more* than a mere fair and reasonable price.

For all these reasons, the Court finds that the probate exception does not apply in this case. The recommendation of the Magistrate Judge as to dismissal of this case for lack of subject-matter jurisdiction will be rejected, and Defendant's Motion to Dismiss for lack of subject-matter jurisdiction (Doc. No. 228) will be denied.

Motion for Judgment as a Matter of Law or, Alternatively for New Trial

The Magistrate Judge recommended that Defendant's Motion for Judgment as a Matter of Law or, Alternatively, for New Trial be denied. A party may file a renewed motion for judgment as a matter of law no later than twenty days after entry of the judgment and may include an alternative or joint request for a new trial. Fed. R. Civ. P. 50(b).

The Magistrate Judge correctly noted that, in a diversity case such as this one, on a motion for judgment as a matter of law, the Court must apply the standard of review used by courts of the state whose substantive law governs the action—here, Tennessee (Doc. No. 260 at 21). Tennessee law applies the same standard as that applied to a motion for directed verdict during trial; that is, the Court must take the strongest legitimate view of the evidence favoring the non-moving party and accept all reasonable inferences in favor of the non-moving party. *Akers v. Prime Succession of Tenn., Inc.*, 387 S. W. 3d 495, 509 (Tenn. 2012).

14

With regard to a motion for new trial, a court may grant a new trial under Fed. R. Civ. P. 59 if the verdict is against the weight of the evidence, if the damages award is excessive, or if the trial was influenced by prejudice or bias, or otherwise unfair to the moving party. *Doe v. Rutherford Cty, Tenn. Bd. of Educ.*, 86 F. Supp. 3d 831, 840 (M. D. Tenn. 2015). The ultimate decision whether to grant such relief is a matter vested within the sound discretion of the district court. *Id*. The jury's verdict should be accepted if it is one that could reasonably have been reached. *Conte v. Gen. Housewares Corp.*, 215 F.3d 628, 637 (6th Cir. 2000).

In her Objection, Defendant argues that Plaintiff failed to introduce proof of causation at trial. Defendant asserts that her conduct could have been the cause in fact of Plaintiff's claimed harm only if there was actual evidence in the record that "but for" her conduct the price brought at auction would have been higher (Doc. No. 261 at 2). In fact, Judge Collier instructed the jury *exactly* what Defendant requested on the issues of causation. Compare Doc. No. 213 at 5-7 with Doc. No. 254 at 92-94. Defendant's argument, though not necessarily far-fetched, is not supported by citation to any authority. The Court is not required to search for authority to support Defendant's claim. Defendant, again with no citation to authority, argues that Plaintiff was required to produce evidence that the incorrect advertising was seen, considered, or relied upon by a potential bidder and that someone was unwilling to attend the auction because of the incorrect advertising (*Id.*). Absent citation to supporting authority, the Court is not persuaded to accept Defendant's argument.

The Magistrate Judge relied upon, among other things, testimony from Colson at trial, in which he stated that it is a customary and usual practice for an auctioneer to rely upon information published in a previous property appraisal and that he would have used the information from the

2011 appraisal report if he had had it (Doc. No. 260 at 35).[13] Causation is a jury question unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome. *Hale v. Ostrow*, 166 S.W. 3d 713, 719 (Tenn. 2005).

Under these circumstances, the Court believes that the jury was given the opportunity, under proper instructions from the Court, to consider all the evidence presented and decide whether, in fact, the misconduct of Defendant caused Plaintiff's harm. There was evidence from which it could conclude that the harm to Plaintiff was sufficiently related to the negligence of Defendant to establish the required causation, "but for" or otherwise. Defendant has not shown that Plaintiff was required to do more. The Magistrate Judge's recommendation on this issue will be adopted and approved, and Defendant's Motion for Judgment as a Matter of Law or, Alternatively, for New Trial (Doc. No. 238) will be denied.

Attorney's Fees and Prejudgment Interest

Finally, Plaintiff seeks attorney's fees and prejudgment interest in a total amount of $222,808.34. The Magistrate Judge recommended that this request be denied.

In diversity cases, requests for attorney's fees are governed by state law. *Developers Diversified of Tenn., Inc. v. The Tokio Marine & Fire Ins. Co.*, No. 3:04-cv-00015, 2019 WL 1861322, at * 9 (M.D. Tenn. Apr. 25, 2019) (citing *Hometown Folks, LLC v. S&B Wilson, Inc.*, 643 F.3d 520, 533 (6th Cir. 2011)). Tennessee courts follow the "American Rule"—in the absence of a contract, statute, or recognized ground of equity so providing, there is no right to have attorneys' fees paid by an opposing party in civil litigation. *Hometown Folks*, 643 F.3d at 533.

---

[13] The Magistrate Judge noted that Defendant attempted to shift liability to Colson, who created and published the inaccurate information. Defendant never pled comparative fault, however, which is necessary to identify another party as the cause-in-fact of an injury. *George v. Alexander*, 931 S.W. 2d 517, 521 (Tenn. 1996).

Plaintiff has cited to no contract or statutory language that would support an award of attorney's fees in this case. She argues that she is entitled to fees under state law because those who occupy a position of trust are responsible to reimburse the attorney's fees and expenses incurred to compensate the plaintiff for negligence. In the case Plaintiff cites for this proposition, the defendant trustee wrongfully disbursed money from the trust to herself and to her brother. *George v. Dunn*, No. E2015-02312-COA-R3-CV, 2016 WL 6471334, at * 8 (Tenn. Ct. App. Nov. 2, 2016). Under those circumstances, the defendant personally benefitted from her misconduct, and her conduct was more than negligent.[14] *George* stands only for the proposition that a court *may* award attorney's fees against a trustee who breaches her fiduciary duty; it does not say a court *must* award such fees.

No one has disputed that Defendant owed a duty to Plaintiff as a beneficiary of the Estate. But Plaintiff sued Defendant for negligence, not for intentional or malicious conduct, and there is no evidence before the Court that Defendant personally benefitted from her alleged misconduct. In its discretion, the Court finds that Plaintiff has not carried her burden of convincing the Court to depart from the American Rule and award attorney's fees in this case.[15] The Magistrate Judge's recommendation that no attorney's fee and costs be awarded will be adopted and approved.

An award of prejudgment interest is permitted in accordance with the principles of equity and is within the sound discretion of the Court. *Myint v. Allstate Ins. Co.*, 970 S. W. 2d 920, 927

---

[14] Similarly, the other case cited by the Magistrate Judge, *Martin v. Moore*, 109 S.W.3d 305 (Tenn. Ct. App. 2003), involved a defendant's intentional withdrawal of funds for her own use and benefit.

[15] Even if the Court were inclined to award Plaintiff some attorney's fees, it would be loath to award the entire amount requested, which far exceeds the amount awarded by the jury and indeed, as far as the Court can tell, exceeds the full amount of Plaintiff's claim.

(Tenn. 1998).[16] The purpose of awarding the interest is to fully compensate a plaintiff for the loss of the use of funds to which he or she was legally entitled, not to penalize a defendant for wrongdoing. *Stamtec, Inc. v. Anson Stamping Co.*, 346 F.3d 651, 659 (6th Cir. 2003) (applying Tennessee law).[17] The Magistrate Judge found that an award of prejudgment interest would result in a "windfall" to Plaintiff because it would not be offset by sharing it with the co-beneficiary. But as the Court has noted above, the co-beneficiary is indebted to the estate in an amount more than the judgment Plaintiff received. As explained above, Plaintiff would likely have no obligation to share her judgment amount with Mr. Sorace. Moreover, whether Plaintiff would have to share any part of the judgment in this case is not before the Court because the parties treated her claim throughout this litigation as if it were her claim and not the Estate's, and the judgment was awarded to her personally, not to the Estate. At this stage, it is too late to deem Plaintiff's claim somehow impaired on the grounds that it actually is the Estate's claim. The Court understands the point, but it needed to be made earlier.[18]

Citing *Scholz v. S.B. Int'l Inc.*, 40 S.W.3d 78 (Tenn. Ct. App. 2000), Plaintiff contends that an award of prejudgment interest is appropriate to fully compensate her for the loss of the use of the money she should have received had Defendant not been negligent, an amount the jury found to total $114,167. In *Scholz*, the court held that fairness will, in almost all cases, require that a

---

[16] *See also* Tenn. Code Ann. § 47-14-123.

[17] When state law claims are before a federal court, the award of prejudgment interest rests on state law. *Bennett v. Highland Graphics, Inc.*, No. 3:14-cv-02408, 2017 WL 4512470, at * 5 (M.D. Tenn. Oct. 10, 2017).

[18] By contrast, a challenge to subject-matter jurisdiction, though it ideally would have been made earlier, as a matter of constitutional law did not *need* to be made earlier.

successful plaintiff be fully compensated by the defendant for all losses caused by that defendant, including the loss of use of money the plaintiff should have received. *Id*, at 83.

Tennessee courts have identified six factors to aid trial courts in deciding whether prejudgment interest is fair and equitable: (1) promptness of commencing the claim; (2) unreasonable delay of the proceedings; (3) abusive litigation practices; (4) certainty of the existence of an underlying obligation; (5) certainty of the amount due; and (6) previous payment for the lost time value of the money. *Bennett v. Highland Graphics, Inc.*, No. 3:14-cv-02408, 2017 WL 4512470, at * 5 (M.D. Tenn. Oct. 10, 2017) (citing *Poole v. Union Planters Bank, N.A.*, 337 S. W. 3d 771, 791 (Tenn. Ct. App. 2010)).

Plaintiff commenced her claim right after acceptance of a bid for this property. Any unreasonable delay of the proceedings was more likely caused by the many transfers of this case within the Court and the multiple motions of Defendant Mathes. The Court sees no evidence of abusive litigation practices. There is no indication that Plaintiff received previous payment for the lost time value of the money she received from Defendant Mathes. Thus, even given the persistent lack of certainty prior to the jury verdict as to the amount (if any) due Plaintiff, the balance of factors as a whole cuts in Plaintiff's favor

Therefore, the part of the Report and Recommendation denying prejudgment interest will be rejected, and Plaintiff's Motion for Prejudgment Interest will be granted.

## **CONCLUSION**

For all these reasons, the Report and Recommendation of the Magistrate Judge (Doc. No. 260) will be rejected in part and adopted and approved in part. Defendant's Motions to Dismiss for Lack of Subject-Matter Jurisdiction (Doc. No. 228) and Defendant's Motion for Judgment as a Matter of Law or, Alternatively, for a New Trial (Doc. No. 238) will be denied. Plaintiff's Motion

for Award of Attorney's Fees, Expenses, and Prejudgment Interest (Doc. No. 230) will be granted in part and denied in part.

_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE